# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**TOMMI R. BATLEY**                                                          **PLAINTIFF**

**VS.**

**BISHOP STATE COMMUNITY COLLEGE;**
**Reginald Sykes, President;**
**Ann Clanton, Vice President of Operations;**
**Adrian Evans, Chair Division of Humanities;**
**ALABAMA COMMUNITY COLLEGE SYSTEM;**
**Jimmy Baker, Chancellor**                                                  **DEFENDANTS**

## JURY TRIAL DEMANDED

## <u>COMPLAINT</u>

This is an action to seek relief and recover damages for the Defendants' actions in violation of Plaintiff's constitutional rights; more specifically, her civil right to be free from workplace discrimination, retaliation, and harassment. Plaintiff was not given equal treatment in regard to the assignment of summer teaching contracts which resulted in a loss of annual income to Plaintiff of at least $22,781.00 as well as further negatively impacting her retirement benefits for the rest of her life by approximately $550.00 per month.

## <u>NATURE OF ACTION AND JURISDICTION</u>

This is an action brought forth under Title VII and 42 U.S.C § 1983 and 1981, as well as the Fourteenth Amendment seeking damages and relief against Defendants, in their official capacity as well as their individual capacity, for committing and condoning acts, under color of law, with the knowledge and intent of depriving Plaintiff of her

constitutional rights; for retaliating against Plaintiff for voicing her complaints of racial discrimination and ongoing harassment at the college; and for refusing or neglecting to address, correct, or prevent ongoing discriminatory actions, acts of retaliation, and harassment directed against Plaintiff due to her race.

In a ruling in 1983 by the Supreme Court of Alabama, *Joseph R. Taylor vs. Troy State University, et al.*, it was determined that "if the individual defendants have not acted toward the plaintiff in accordance with their own rules and regulations, their acts are arbitrary...and will not be barred by the sovereign immunity clause of the Constitution of 1901." In citing *Gunter v. Beasley, supra*; Ex parte Carter, 395 So. 2d 65 (Ala.1980), it continues to include that actions brought against state officials are not barred by the sovereign immunity clause when the actions are "brought against State officials in their representative capacity and individually where it is alleged that they have acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law." In citing *Dampier v. Pegues*, 362, So. 2d 224 (Ala.1978) as an example, it was required by "University of Alabama in Birmingham officials to pay an architect's fee due under contract, if the facts showed that payment was being withheld arbitrarily."

## PARTIES

1. Plaintiff, Tommi R. Batley, is a fulltime, tenured English Instructor at Bishop State Community College in Mobile, Alabama.  Plaintiff is currently assigned to the Division of Humanities as an English Instructor. Plaintiff holds a Doctoral Degree from the University of South Alabama as well as a Master's and B.S. Degree in her field. Plaintiff has been employed at Bishop State for over ten (10) years.  Plaintiff is a white female.

2

2. Defendant, Bishop State Community College, (a nationally recognized Historically Black College and University) is located in Mobile, Alabama. It is a two (2) year college that is operated under the authority and supervision of the Alabama Community College System. Jimmy Baker is current acting Chancellor.

3. Reginald Sykes is the acting president for Bishop State ("the college") who was apprised of Batley's complaints of ongoing discrimination and disparate treatment prior to her filing an EEOC complaint in November 2016 (Exhibit 1). President Sykes neglected his duties as President of the college and primary policy maker to address complaints of racially discriminatory treatment and take action to eliminate it. More specifically, he had a professional obligation to enforce policy and to ensure that all employees, including Batley, are afforded a workplace free from discrimination and harassment as well as equal rights as set forth in the US Constitution. President Sykes is ultimately responsible for enforcing the policies and procedures that are put into place by the institution regardless of the actions of those under his supervision to whom he has assigned certain decision making responsibilities. President Sykes is being sued for damages in his individual capacity and for declaratory and injunctive relief in his official capacity. President Sykes is a Black male.

4. Ann Clanton is the Director of Operations at the college and was also apprised of the ongoing problems Batley was having with others in positions of authority at the college (Exhibit 2). Clanton is considered second in command at the college and is also responsible for decision making as well as applying and enforcing policy. She is ultimately responsible for developing and approving class schedules as well as approving teaching assignment recommendations sent to her by the Division Chairs

3

to ensure compliance with policy and procedure in regard to teaching assignments. In doing so, Clanton approved and allowed the teaching assignments that were recommended by the Chair of the Division of Humanities (Exhibit 3). Clanton knowingly and willfully allowed and approved Evans' recommendation for summer class assignments. Clanton is being sued for damages in her individual capacity and for declaratory and injunctive relief in her official capacity.

5. Adrian Evans, Chairperson for the Division of Humanities, created and recommended the 2018 summer schedule as well as the instructors for each class in her division. Although Batley and another coworker, Patty Crocket (black female), began fulltime employment at the college at the same time, Fall Semester 2005, Evans informed Batley that Crockett had seniority over Batley and would be afforded a fulltime summer teaching contract while Batley would not be given any classes (Exhibit 4). Evans assigned 4 classes to Crockett, which constitutes a full time contract, and no classes to Batley. As a result of this disparate treatment, Batley suffered a loss of annual income of at least $22,781.00 (Exhibit 5). In addition to the annual loss of income, Batley's retirement benefits will also be significantly reduced by approximately $550/month for the rest of her life as she is within 2 years of retirement with 25 years of service credit (Exhibit 6). Evans is being sued for damages in her individual capacity and for declaratory and injunctive relief in her official capacity. Adrian Evans is a Black female.

6. At the time of the incidents contained herein, all Defendants were acting under the color of law in their roles as administrators, policy makers, and decision makers for the college.

4

7. All of the Defendants are liable in this case for not adhering to and/or enforcing their own policies and procedures.

## JURISDICTION AND VENUE

8. This Court has jurisdiction to hear these actions based upon 42 U.S.C. § 1983, as amended, as well as §1981. Equitable and other relief are also sought under 42 U.S.C. § 2000e (5)(g). Jurisdiction is also based on 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. §§ 1981 et seq.

## FACTS

9. Plaintiff filed an EEOC Charge against the Defendants in November 2018 (Exhibit 7 and 8) alleging ongoing racial discrimination and retaliation as a result of her filing previous complaints with the EEOC (Exhibit 9) as well making formal complaints to the Administration at the college about ongoing discriminatory treatment (Exhibit 1 and 2). Although the 2018 charge was investigated by the EEOC (Exhibit 10 and 11), it was ultimately dismissed citing a failure to timely file the complaint (Exhibit 12). Since Batley was certain that her complaint was timely filed, she was confounded by the decision by the EEOC to dismiss her complaint based solely on that factor (Exhibit 13). As a result, she requested that her complaint be reviewed by someone other than those involved in the initial investigation (Exhibit 14). Shortly thereafter, Batley received a letter in the mail from the EEOC district manager indicating that he "had been in contact" with the local division that conducted the investigation and sided with their decision to dismiss the claim based on the timeliness of filing the complaint (Exhibit 15). Based on this response, it was clear that Batley's request to have the complaint reviewed had not and would not be honored.

5

10. Although a cursory glance at the dates on the college calendar may suggest that Batley's complaint of unequal teaching assignments during the summer 2018 semester may be untimely, the facts and circumstances surrounding the nature of how classes are determined, or "standard operating procedure", makes the college calendar an unreliable source for determining timeliness in this particular case. Standard operating procedure is that the schedule is not finalized until after registration is complete, and very often, it changes even later than that if the decision makers and policy makers choose to change it. Batley used her summer 2015 teaching assignment (Exhibit 16) as an example of the college's "standard operating procedure" to explain the unpredictable nuances of class scheduling. Batley's 2015 summer schedule was changed two weeks after the beginning of the semester. Batley had already met classes for 2 weeks when a class was taken from Batley and given to her Division chair who taught the class instead of Batley. Batley was under the impression that once the matter of seniority was addressed with Human Resources that she would be offered a summer contract just as Crockett had been offered.

11. Furthermore, as Batley indicated during the EEOC investigation, teaching contracts are not awarded by Division Chairs just as seniority is not determined by Division Chairs. That is the responsibility of Human Resources. Therefore, Batley's communication with her Division Chair was not when Batley knew she would not be assigned a summer teaching contract. It was necessary for Batley to seek clarification from Marquita Lyons, the Director of Human Resources (Exhibit 17), before she would know if she would be given a summer contract. Given the fact that Batley was not able to meet with the Director of Human Resources until the following week after

6

contacting her Division Chair about summer teaching assignments, any reasonable person, or jury, would conclude that sufficient evidence and documentation provided herein, and to the EEOC Investigator, clearly establish that the EEOC charge was timely filed within 180 days.

12. Lyons is no longer employed at the college and has since been replaced by another Director of Human Resources.

13. The college's published policy for summer employment specifically states that summer employment assignments are to be determined based on "seniority, a rotation basis, or some combination thereof" (Exhibit 18). Since Batley and Crockett both applied for and were hired for the same position, completed interviews on the same day, participated in orientation for new employees, began teaching on the same day, and were paid for the same number of days, both should have equal seniority.

14. Batley was informed by Lyons that according to the information in the AS/400 database, Crockett had seniority because her hire date in the AS/400 system indicated that she was hired 5 days before Batley. Batley responded by telling Lyons that the Fall 2005 semester did not even *begin* for new employees until August 15, 2005, but Lyons did not respond. Batley explained to Lyons that unless Crockett's contract contained 5 additional days for which she was compensated in addition to the regular D-1 schedule salary that is based on a 175-54 calendar days contract, the date in AS/400 could not possibly be accurate (Exhibit 5). Again, Lyons looked dumbfounded and did not comment. Instead, she proceeded to apply lip gloss while Batley continued to explain to Lyons that it was also common knowledge that AS/400 data was not a reliable source for many reasons and certainly should not be relied

upon as a sole source. Not only can the data be easily changed or altered by anyone with the authority to do so, but there are many discrepancies in the information in AS/400 as well. To demonstrate this, Batley used her own AS/400 personnel data printout as well as another fulltime instructor's personnel data printout as examples (Exhibit 19). Batley's AS/400 data printout shows a hire date of August 17, 2005, but it also shows her as a rank 4 employee with a PhD. However, Batley did not complete her PhD until December 2010 nor was she compensated for it when she was hired in 2005. Therefore, the data was obviously changed by someone with the authority to do so, and if *some* information can be changed, *other* information can be changed. Lyons acknowledged that she was aware that the data could be altered and she was also aware of discrepancies in the AS/400 data and disclosures published by the college. At no time during their meeting did Lyons cite or produce any other source to support the claim that Crockett had seniority over Batley. Batley also reminded Lyons that both Batley and Crockett were instructional faculty, not staff, as faculty contracts are different from staff contracts. Teaching contracts have a specific number of calendar days. The schedule D-1 salary scale is used for full time instructors using a 175-54 calendar (Exhibit 5). Both Batley and Crockett began teaching for the college on the first day of classes for the Fall Semester, August 15, 2005.

15. After Lyons could not provide or explain the policy for determining seniority among instructional faculty, Batley requested a meeting with Clanton (Exhibit 20). Batley relayed the conversation that she had with Lyons and asked Clanton for clarification. Clanton told Batley that she did not know the answers to Batley's questions about how seniority is determined in cases like hers, but Clanton told Batley that she would

8

contact legal counsel in Montgomery to look into it and would get back with Batley. Clanton never followed up with Batley nor offered an explanation or clarification on the matter of determining seniority in her case. Clanton has never confirmed nor denied to Batley that Crockett has seniority over Batley.

## COUNT I- REVERSE RACE DISCRIMINATION

16. Plaintiff incorporates by reference the allegations stated herein that the actions of the Defendants, Bishop State Community College and its administration, in their individual and official capacities, President Sykes, Ann Clanton, and Division Chair, Adrian Evans; and the Alabama Community College System, as well as Chancellor Baker, demonstrated evil intent and malice on the basis of Plaintiff's race and in violation of her constitutional right to be free from workplace discrimination. Therefore, pursuant to 42 U.S.C § 1983 and 1981, and the Fourteenth Amendment, Plaintiff is seeking damages and relief against Defendants, in their individual capacity as well as their official capacity for committing and/or condoning acts, under color of law, with the intent and purpose of depriving Plaintiff of her constitutional rights.

17. Plaintiff has filed a formal complaint with the EEOC and has been issued a right to sue letter prior to filing this action.

18. As a result of Defendants' actions and unjust treatment of Plaintiff, Plaintiff has suffered loss of income when she was denied equal employment opportunities in her Division. Additionally, Plaintiff has suffered humiliation, mental anguish, emotional distress, and other consequential damages as a result of Defendants' actions. Plaintiff has been forced to seek medical treatment as well as mental health counseling as a

result of the intentionally unjust, disparate treatment she has been subjected to at her workplace by Defendants.

WHEREFORE, Plaintiff demands a judgment against Defendants, Bishop State Community College, as well as the parties named herein in their individual capacities as well as their official capacities, President Sykes, Ann Clanton, and Division Chair, Adrian Evans, as well as the Alabama Community College System, along with its policy maker, Chancellor Baker, for an amount which will compensate Plaintiff, as well as satisfy punitive damages, attorney fees, and other related costs.

## COUNT II- RETALIATION

19. Plaintiff hereby incorporates by reference the allegations stated herein.

20. The actions of Defendants, Bishop State Community College and Alabama Community College System, were done in retaliation for Plaintiff filing complaints with the EEOC regarding the ongoing discrimination due to her race and her attempts to assert her lawfully protected federal civil rights.

21. The actions of Defendants, Bishop State Community College and its administration in their individual and official capacities, President Sykes, Ann Clanton, and Division Chair, Adrian Evans, as well as the Alabama Community College System and Chancellor Baker, were done intentionally on the basis of Plaintiff's race and in violation of her right to be free from workplace retaliation. Therefore, pursuant to 42 U.S.C § 1983 and 1981, Plaintiff is seeking damages and injunctive relief against Defendants, in their individual as well as their official capacity, for committing and/or

10

condoning acts, under color of law, with the intent and purpose of depriving Plaintiff of her constitutional rights.

22. Acts of retaliation against Plaintiff by Defendant were malicious, intentional, and in violation of 42 U.S.C § 1983 and 1981 and the Fourteenth Amendment.

23. Plaintiff has been issued a right to sue letter from the EEOC prior to filing this action.

24. As a result of Defendants' actions and unjust treatment of Plaintiff, Plaintiff has suffered loss of income when she was denied equal employment opportunities in her Division at Bishop State. Furthermore, Plaintiff has suffered humiliation, mental anguish, emotional distress, and other consequential damages as a result of being treated unfairly and more harshly than her Black female coworker. Plaintiff has been forced to seek medical treatment and mental health counseling as a result of the discrimination and retaliation she has been subjected to at her workplace by Defendants.

WHEREFORE, Plaintiff demands a judgment against Defendants, Bishop State Community College and its administration in their individual capacity as well as their official capacity, President Reginald Sykes, Ann Clanton, and Division Chair, Adrian Evans as well as the Alabama Community College System and Chancellor Baker for an amount which will compensate Plaintiff, including punitive damages, attorneys' fees, and other associated costs.

11

Respectfully submitted, this the 6th day of December, 2019.

BY: _____

**TOMMI R. BATLEY**
*PRO SE*
**1119 Selma Street**
**Mobile, AL 36604**
**(251) 366-2358**

**Plaintiff demands a trial by jury on all causes of action.**

BY: _____

**TOMMI R. BATLEY**

12

## LIST OF EXHIBITS

1   Letter to President Sykes regarding ongoing discriminatory treatment (April 8, 2016)

2   Letter to Ann Clanton with complaints of discrimination (May 20, 2016)

3   Summer 2018 course offerings/schedule for Humanities

4   Email from Division Chair re: Summer Classes and Seniority (May 30, 2018)

5   Copy of Batley's salary schedule with and without summer salary income (2018-2019)

6   Tier I Retirement information (As of 6/30/2018--20 years 11 months service credit)

7   Complaint filed with EEOC on 11/27/2018

8   Letter from John Byrd (12/6/2018); revised EEOC complaint after government shutdown

9   Other EEOC complaints filed citing the same problems (2008, 2016)

10   The College's Position Statement about the 11/27/2018 charge

11   Batley's response to the college's position statement

12   Right to sue letter from EEOC (9/9/2019)

13   Emails and documents from EEOC regarding government shutdown (need to add)

14   Email to EEOC requesting review of case after case was dismissed

15   Letter from EEOC District Manager in Montgomery (11/6/2019)

16   Email from former Chair (May 26, 2015) taking summer class from me more than a week after classes started; email from current chair assigning a summer class (2019) more than a week after classes started

17   Email request (May 30, 2018) to meet with HR regarding seniority and summer contracts

18   Summer employment policy (ACCS and Bishop State)

19   AS/400 Database Printouts of Personnel Information Showing discrepancies

20   Email w/Ann Clanton's secretary requesting a meeting to discuss seniority (2/7/2019)

# EXHIBIT 1

# Revé Batley, Ph.D.
### 1119 Selma Street Mobile, Alabama 36604

April 8, 2016

Dr. Reginald Sykes, Acting President
Bishop State Community College
351 North Broad Street
Mobile, Alabama 36603

Dear Dr. Sykes:

This is certainly not how I would like for us to meet as I do understand the impression it may give, and I wish it were not necessary for me to have to come to you with these matters at all. That being said, I am sure people in hell wish they had a glass of ice water, too. Meaning, this is not an easy or comfortable thing for me to do. I have spent countless hours trying to make this as concise as possible and trying to remove as much emotion as possible, but…as I said, I am sure people in hell wish they had a glass of ice water, too. That just isn't possible. This is no small matter, nor is it exempt from emotion. This correspondence is not brief, but I assure you it is quite abbreviated and is by no means exhaustive.

In all fairness and as a professional courtesy to you, I believe you should have the opportunity to address these matters, or at the very least, be informed of them. I would not waste your time (or mine) if I did not already know that in addition to these things being unprofessional, unethical, and just downright mean, more notably, they are illegal.

With that being said, I understand there are usually two sides to every story, and I am not asking you to take my word for any of this. Actually, to the contrary, I am encouraging you to attempt to get the other side. Perhaps then we might all have some answers. I can assure you, however, I am not making any claims that I cannot back up with documentation or that you cannot easily verify yourself with very little effort. Meaning, if it walks like a duck and quacks like a duck, it's probably a duck. Unfortunately. You can put lipstick on a pig, but it will still be a pig.

My primary reason for contacting you is in regard to my current chain of command at Bishop State. Hence, the need for an awkward and uncomfortable meeting with you. I understand the logic and premise for having a chain of command and have no problem with following protocol. I know how it is *supposed* to work. However, what are employees supposed to do when the chain of command *is* the *problem*? What is the protocol then?

I have been employed as an English teacher in the Division of Developmental Education at Bishop State for almost 10 years. I was in the Division of Humanities for the first 3 years. My division chair, Roxanne Hannon-Odom, who is my direct supervisor, and the Dean of Instruction, Laticia McCane, *are* the chain of command for me. In addition to these two individuals, there is also the gatekeeper who determines what makes it through (or not) to the highest person in charge at the college, so for some, it's a stalemate.

That being said, it should be understood that with great power comes great responsibility which is why it should also be of the utmost importance that these people be impartial—not biased or prejudiced. Or at the very least, they should not wear it like a badge of pride. Unfortunately, however, that is what has necessitated this

correspondence—people who hold positions of power at this college and their blatant abuse of that power and disparate treatment of some of their subordinates—in this case, me. Not only has this abuse taken its toll on my health and my personal life, but it has destroyed my morale. It has affected and overshadowed my passion and enthusiasm for a job that I once dearly loved.

In the division of Developmental Education, there are only three (3) full time, tenured employees: the division chair, another female instructor, and me. The other instructor and I were hired on the exact same date for the exact same lateral position. However, as my credentials and resume will reflect, I have more college level teaching experience, more combined teaching experience, and more overall qualifications. To my knowledge, these are the only other obvious differences between the other instructor and me: I have a Ph.D., and she has a Master's degree; she has a child, and I do not; she is in a sorority with Dean McCane and our division chair, and I am not; she is Black, and I am not. I do not blame her or hold her responsible for any of this.

The content that follows is in no particular order, nor is it exhaustive. The timeline is included to show how the disparate treatment has not been simply an isolated incident, an accident, or a mere coincidence. Unfortunately, rather, it is blatant and has been going on for many years.

**August 1996--June 2015**—The other instructor in my division has *never* been denied a travel request to attend a conference at the college's expense, and she attends at least one or more conferences every year. My travel requests have been denied *multiple* times either by my division chair and/or Dean McCane. The college has approved and paid for me to attend only three (3) conferences during almost 10 years of employment, and 2 of those 3 approvals were when I reported to a *different* division chair (Humanities) and/or a *different* Dean.

In **June 2015**, after receiving a hostile and demeaning email from my division chair denying my request to attend a Developmental Education conference that summer, I used *personal* leave time and *personally* paid for all of my expenses to attend the conference to prepare for the upcoming changes that were to take place in our division beginning Fall semester 2015. Dean McCane and the interim president, Dr. McBride, were both copied on the email that was sent to me.

During the same **Summer 2015**, the other female instructor and I were both assigned 2 classes each to teach during the 2015 summer semester. (Our summer salary is based on how many classes we teach.) The other instructor taught and was paid for both of her classes. However, during the *second* week of classes, my division chair notified me in an email that she was taking one of my two classes and would be teaching it herself. She stated that Dean McCane gave her the directive to take the class *from me* which left me with only *one* class to teach at 7:40PM. Since the Dean must approve any changes to the schedule, there is no question that my division chair, as well as the Dean, is equally responsible for this action that resulted in extreme collateral consequences for me. I had declined other summer employment opportunities based on my agreement and commitment to the college to teach *both* of those classes.

**June 2011, June 2014, May 2015**—For at least three (3) different summers, the other instructor in my division was offered and allowed to teach *more* summer classes than I was which resulted in more opportunities for her to increase her overall annual income than I was given. The financial loss to me was *approximately* $7,000-$10,000 *each* time this occurred. The teaching assignments are made at the discretion of my division chair and are approved by the Dean. This, again, makes both of these individuals equally responsible and liable for these actions.

Most recently in **January 2015,** my division chair and/or Dean McCane have both harassed and attempted to force me to relocate my office and give up my classroom without any logical or sensible explanation

whatsoever. When President Lowe became aware of this, he and Dean Allen intervened on my behalf. However, as a result of their involvement, my division chair, along with Dean McCane, chose to retaliate by making my teaching schedule for the next school year as difficult as possible which created unnecessary hardships for me as well as others. I have had the same classroom and office space for 7 years which has served me and my students well.

**August 2010 to Present**—The other instructor in my division is given a preferential teaching schedule, and our division chair also has a preferential schedule in which she only teaches 2 days a week. However, my one (and *only*) schedule request has been repeatedly denied. The other instructor has *never* been *required* to teach an 8:00AM class. I have been *required* to teach 8:00AM classes *many* times.

**May 2009**—Dean McCane made the recommendation to President Lowe to terminate my employment with the college by not renewing my contract. The rationale given was a necessary reduction in workforce due to finances and low enrollment. Upon her recommendation, my contract was not renewed, and I was terminated. However, the other instructor's contract in the Division was renewed, and she was retained. Only after filing a complaint with the EEOC was my contract renewed. I returned to teach in the fall at which time I dismissed the EEOC charge.

**Fall 2014**—I was *forced* to serve on an interviewing committee in the Fall of 2014 to select a full time Developmental English Instructor. I made my request to Dean McCane and to President Lowe to be excused, and gave my reason, but my request was denied. It was just as I expected. The entire interview/selection process was a farce—not to mention illegal. The other committee members signed the recommendation without having read any of the written portions of the interviews or reviewing all of the applicants' credentials and qualifications. I did not sign the recommendation because the person who was being recommended for hire was the *least* qualified of *all* the applicants. He was a 47 year old man who had *never* held a permanent, full time position of employment. *Ever.* More importantly, however, he could not *write*. He was recommended for the position over other applicants with years of extensive teaching experience and impressive credentials. He is now employed as a fulltime Developmental English Instructor at Bishop State—*hired to teach writing*—in the division of developmental education.

I realize the college has many problems much bigger than mine, but I can no longer use that to excuse the blatant disparate treatment I continue to experience and have to endure here. I do not have a problem with authority or with following protocol, but when the system is so corrupt and so flawed that following protocol becomes the problem, then what? I am now in a constant state of *wait and see and hope* that the next president who passes through (or stays) won't be just as bad as the last one or just as corrupt or broken as the place he has been sent to fix. *Wait and see and hope* has failed miserably so far. Optimism is a practically non-existent now.

All that being said, it is by no means a reflection, indication, or a strike against you as the current acting president. I do not know any more about you than you do about me. I am sure you are very capable of handling these matters. I simply know how things work here, and I know that others before you were capable of handling these matters as well, but they did not. It is going to take you some time to figure out which dogs you can pet and which ones will bite the hand that feeds them. Right now, they are all wagging their tails, but all of those are not going to be loyal—to you or to the college. While you are busy with the herculean task of trying to improve the image and reputation of the college, those two and others just like them are busy giving the college another black eye. I do realize that none of this is your fault, but unfortunately, it is now your problem.

I currently serve and have more students on roll than any other instructor in my division. I try to do the job that I was hired to do to the best of my ability, and all I ask is that I be allowed to do that without people making it unreasonably or unnecessarily difficult. Fair and equal treatment here is only a pipedream and would just be a nice bonus at this point.

It is my prayer that you will address these kinds of things and this type of conduct and return some semblance of hope to an otherwise seemingly hopeless situation. I do apologize for having to burden you with this, but the load is more than I can continue to bear alone. If you should have any questions or would like additional information regarding any of these matters, please do not hesitate to contact me.

Sincerely,


Revé Batley, Ph.D.


cc: Ms. Ann Canton, Vice President of Operations

# EXHIBIT 2

*I sent this letter to her following a meeting I had with her and the interim president AFTER she and I had met to discuss my problems and concerns. AFTER this letter was sent is when I was offered a class to teach this summer after classes had already started meeting.*

# Revé Batley, Ph.D.

---

1119 Selma Street Mobile, Alabama 36604

(251) 366-2358

rbatley@bishop.edu

May 20, 2016

Ms. Ann Clanton, Vice President of Operations
Bishop State Community College
351 North Broad Street
Mobile, Alabama 36603

Dear Ms. Clanton:

As you might imagine, it has taken me some time to be able to collect my thoughts and compose this letter after the meeting we had with Dr. Sykes. I am assuming that was at your prompting as I was completely caught off guard when I received the call that he wanted to meet with me. I was even more surprised after arriving for the meeting to discover that it was I who had requested the meeting, not him, and that was only the beginning of the mass confusion that followed.

At the beginning of the meeting, Dr. Sykes stated that you had apprised him of our meeting and my concerns. Because he said this, and because you were also present, I assumed it was true. Then I listened as he began to address some of the issues I had mentioned to you. He began by addressing travel requests by isolating one example to use to defend the actions of my supervisors. Then he moved on to the teaching schedules, specifically the 8:00AM class assignment, and chose to dismiss the principle of that matter as well by simply suggesting that *everyone can just come in to work earlier than scheduled, and that will solve that problem.*

I honestly wanted to give him the benefit of the doubt because it was apparent to me that there was a serious disconnect during that meeting. It was as if he was not aware of the severity of the problems at all. The only other explanation for the dismissive manner in which he handled those matters was to assume that he condoned the decisions and actions of these people who are in leadership positions and had no objective to how they are using their power and positions. That is not the impression that I wanted to take away from that meeting. However, I could not deny that it was certainly not beyond the scope of possibility. Still, I wanted and tried to be hopeful...

Needless to say, after not hearing anything further from him, or from you, to possibly shed some light on exactly what happened in that 5-7 minute meeting, I began to lose hope for any change or improvement with my situation. Unfortunately, I was right.

Once again, summer teaching assignments were given, and this time, I was not assigned any classes to teach. None. Not one. Not only was my coworker given 2 classes to teach, but she was also given the evening class that I specifically requested and have always taught (with the exception of last summer when it was taken from me 2 weeks after I had already started the class and given to my division chair), and my division chair has a full time load to receive her full summer salary as always. I can only assume that the President approved this decision as I am sure he had been apprised of this recurrent problem as he was the others.

In addition to not being given a summer teaching assignment, I received an end of the year evaluation from my division chair that once again berated me for making a travel request (that she denied) and for voicing my concerns that I felt that I had been treated unfairly in regard to this matter. In her comments, she attempted to justify her reasons for denying the request by referring to some rule that no one else (that I have spoken with) has ever heard of regarding travel during the summer semester. She went further to blame Dr. Crenshaw for denying the request due to lack of funds when the request was never even given to Dr. Crenshaw for consideration or denial. Meaning, I received an end of the year evaluation with comments from my supervisor that had nothing whatsoever to do with my teaching ability, effectiveness in the classroom, or anything at all pertaining to my efficacy as an instructor. I received this evaluation by email and was asked to sign it and slide it underneath her office door if she was not there.

President Sykes stated repeatedly that he could not do anything about what happened before he got here, but he intended *to follow policy* while he is here now. During that meeting, I requested a copy of the policies that he intends to follow, and I was told that I would be given copies of those policies. I have not yet received any policies in regard to any of my concerns. It is my hope that these policies will help me understand and accept that this disparate treatment is not actually illegal as it so blatantly appears, but rather it is justified and upheld by rules and guidelines set forth by the system that allows these types of arbitrary decisions. However, I will need to see this in writing to believe it, and again, I would appreciate it very much if you could please provide me with copies of these policies within the next two weeks if possible.

I will be happy to come by and pick up the copies from your office as soon as you have them available. However, if you are not able to provide me with policies regarding my specific concerns in the next couple of weeks, I would appreciate some form of communication to let me know that. You may contact me by email at rbatley@bishop.edu or on my cell at 251-366-2358. If I need to readdress this letter directly to the President instead of to you, please let me know that as well, and I will certainly do so. I appreciate your time and assistance with this matter.

Sincerely,

Revé Batley, Ph.D.

# EXHIBIT 3

| Call Num | Course | # Enr | Status | Hi nl- | Seat s | Bld/Rm | Instructor | Days of Wk | Time | Description | BTC Room |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10078 | ART100 A02 | 16 | Open | | 9 | CALD/110 | STAFF | M T W TH | 09:10A 10:10A | ART APPRECIATION | |
| 10060 | ART100 A03 | 23 | Open | | 2 | CALD/109 | STAFF | M T W TH | 10:20A 11:20A | ART APPRECIATION | |
| 10061 | ART100 A50 | 14 | Open | | 11 | CALD/109 | STAFF | M & W | 05:30P 07:30P | ART APPRECIATION | BTC/205 |
| *10534 | ENG092 A01 | 21 | Open | 1 | 4 | ADMN/206 | STAFF | M T W TH | 08:00A 10:00A | BASIC ENGLISH I | BTC/207 |
| *10537 | ENG093 A01 | 25 | Closed | 2 | 0 | ADMN/207 | STAFF | M T W TH | 08:00A 10:00A | BASIC ENGLISH II | BTC/206 |
| *10495 | ENG093 A03 | 21 | Open | | 4 | ADMN/207 | STAFF | M T W TH | 10:20A 11:20A | BASIC ENGLISH II | BTC/206 |
| *10496 | ENG093 A50 | 23 | Open | | 2 | ADMN/207 | STAFF | M & W | 05:30P 07:30P | BASIC ENGLISH II | BTC/206 |
| *10542 | ENG101 A01A | 24 | Open | 1 | 2 | ADMN/204 | STAFF | M T W TH | 08:00A 10:00A | ENGLISH COMPOSITION I | BTC/208 |
| 10521 | ENG101 A04 | 27 | Open | | 3 | ADMN/204 | STAFF | M T W TH | 11:30A 12:30P | ENGLISH COMPOSITION I | BTC208 |
| *10500 | ENG101 A50 | 30 | Closed | | 0 | ADMN/204 | STAFF | M & W | 05:30P 07:30P | ENGLISH COMPOSITION I | BTC208 |
| *10549 | ENG102 A01 | 15 | Open | 2 | 10 | ADMN/208 | STAFF | M T W TH | 08:00A 10:00A | ENGLISH COMPOSITION II | BTC/207 |
| *10503 | ENG102 A02 | 16 | Open | | 9 | ADMN/205 | STAFF | M T W TH | 09:10A 10:10A | ENGLISH COMPOSITION II | BTC/138 |
| *10504 | ENG102 A04 | 12 | Open | | 13 | ADMN/205 | STAFF | M T W TH | 11:30A 12:30P | ENGLISH COMPOSITION II | BTC/216 |
| *10505 | ENG102 A50 | 18 | Open | | 7 | ADMN/202 | STAFF | M & W | 05:30P 07:30P | ENGLISH COMPOSITION II | BTC/138 |
| 10571 | ENG251 A03 | 8 | Open | | 22 | ADMN/206 | STAFF | M & W | 10:20A 12:20P | AMERICAN LITERATURE I | BTC/138 |
| *10568 | ENG261 WH1 | 10 | Open | | 15 | ADMN/202 | STAFF | WEB | WEB | ENGLISH LITERATURE I | BTC/138 |
| *10572 | ENG262 WH1 | 3 | Open | | 27 | ADMN/202 | STAFF | TUESDAY | 12:30P 02:30P | ENGLISH LITERATURE II | BTC/138 |
| *11178 | MUS101 A03 | 10 | Open | | 15 | GYM/GBR | STAFF | M T W TH | 10:20A 11:20A | MUSIC APPRECIATION | |
| *11180 | MUS101 B50 | 13 | Open | | 12 | GYM/GBR | STAFF | T & TH | 05:30P 07:30P | MUSIC APPRECIATION | BTC/205 |
| *13105 | PHL210 WH1 | 13 | Open | | 12 | ADMN/206 | STAFF | WEB | WEB | ETHICS & THE HEALTH SCIENCES | BTC/216 |
| *11437 | RDG085 A02 | 12 | Open | | 13 | LIBR/LLL | STAFF | M T W TH | 09:10A 10:10A | DEVELOPMENTAL READING III | |
| 11431 | RDG085 B03 | 9 | Open | | 21 | LIBR/LLL | STAFF | T & TH | 10:20A 12:20P | DEVELOPMENTAL READING III | |
| *11438 | RDG085 B50 | 18 | Open | | 7 | LIBR/LLR | STAFF | T & TH | 05:30P 07:30P | DEVELOPMENTAL READING III | BTC/216 |
| *11786 | SPH107 A03 | 27 | Open | | 3 | ADMN/209 | STAFF | M T W TH | 10:20A 11:20A | FUNDAMEN OF PUBL SPEAKI | BTC/209 |
| *11787 | SPH107 A05 | 24 | Open | | 6 | ADMN/209 | STAFF | M T W TH | 11:30A 12:30P | FUNDAMEN OF PUBL SPEAKI | BTC/209 |
| 11803 | SPH107 A50 | 27 | Open | | 3 | ADMN/209 | STAFF | M & W | 05:30P 07:30P | FUNDAMEN OF PUBL SPEAKI | BTC/209 |
| 11804 | SPH107 B05 | 29 | Open | | 1 | ADMN/209 | STAFF | T & TH | 02:30P 04:30P | FUNDAMEN OF PUBL SPEAKI | BTC/209 |
| *11789 | SPH107 B50 | 26 | Open | | 4 | ADMN/209 | STAFF | T & TH | 05:30P 07:30P | FUNDAMEN OF PUBL SPEAKI | BTC/209 |
| | | | | | | | | | | | |
| Humanities | | | | | | | | | | | |

8/21/2019

Display Courses

## Display Courses - SU2018

| Call Num | Course | # Enr | Status | Cr Hrs | Mini-Term | Seats Avail | Campus | Bld/Rm | Instructor | Start Date | End Date | Days of Wk | Time | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *10534 | ENG092 A01 | 12 | Open | 3.0 | 1 | 13 | MAIN CAMPUS | ADMN/206 | CROCKETT PATTY | 05/25/2018 | 06/29/2018 | M T W TH | 08:00A 10:00A | BASIC ENGLISH I |
| *MINI-TERM 1 COURSE - 5/25/2018 TO 6/29/2018 | | | | | | | | | | | | | | |
| *10537 | ENG093 A01 | 19 | Open | 3.0 | 2 | 10 | MAIN CAMPUS | ADMN/207 | CROCKETT PATTY | 07/02/2018 | 08/07/2018 | M T W TH | 08:00A 10:00A | BASIC ENGLISH II |
| *MINI-TERM 2 COURSE - 7/02/2018 - 8/07/2018 | | | | | | | | | | | | | | |
| *10495 | ENG093 A03 | 15 | Open | 3.0 | | 10 | MAIN CAMPUS | ADMN/207 | CROCKETT PATTY | 05/25/2018 | 08/07/2018 | M T W TH | 10:20A 11:20A | BASIC ENGLISH II |
| *CANVAS FACE-TO-FACE COURSE | | | | | | | | | | | | | | |
| *10496 | ENG093 A50 | 15 | Open | 3.0 | | 10 | MAIN CAMPUS | ADMN/207 | CROCKETT PATTY | 05/25/2018 | 08/07/2018 | M & W | 05:30P 07:30P | BASIC ENGLISH II |
| *CANVAS FACE-TO-FACE COURSE | | | | | | | | | | | | | | |
| 10570 | ENG101 AB1 | 0 | Canceled | 3.0 | | 30 | ALMA BRYANT | ALMA/BRY | STAFF | 05/25/2018 | 08/07/2018 | TUESDAY | 05:30P 09:30P | ENGLISH COMPOSITION I |
| *10542 | ENG101 A01A | 23 | Open | 3.0 | 1 | 4 | MAIN CAMPUS | ADMN/204 | EVANS ADRIAN CLIFFETTE | 05/25/2018 | 06/29/2018 | M T W TH | 08:00A 10:00A | ENGLISH COMPOSITION I |
| *MINI TERM 1 CANVAS FACE-TO-FACE COURSE | | | | | | | | | | | | | | |
| *10574 | ENG101 A01B | 3 | Open | 3.0 | 2 | 27 | MAIN CAMPUS | ADMN/204 | ESCOBIO DANA D | 07/02/2018 | 08/07/2018 | M T W TH | 08:00A 10:00A | ENGLISH COMPOSITION I |
| *MINI-II COURSE | | | | | | | | | | | | | | |
| 10521 | ENG101 A04 | 29 | Open | 3.0 | | 2 | MAIN CAMPUS | ADMN/204 | ROBINSON LASHONDRA V | 05/25/2018 | 08/07/2018 | M T W TH | 11:30A 12:30P | ENGLISH COMPOSITION I |
| *10500 | ENG101 A50 | 23 | Open | 3.0 | | 7 | MAIN CAMPUS | ADMN/204 | KING JULIE C | 05/25/2018 | 08/07/2018 | M & W | 05:30P 07:30P | ENGLISH COMPOSITION I |
| *CANVAS FACE-TO-FACE COURSE | | | | | | | | | | | | | | |
| *10549 | ENG102 A01 | 22 | Open | 3.0 | 2 | 4 | MAIN CAMPUS | ADMN/208 | EVANS ADRIAN CLIFFETTE | 07/02/2018 | 08/07/2018 | M T W TH | 08:00A 10:00A | ENGLISH COMPOSITION II |
| *MINI-TERM 2 | | | | | | | | | | | | | | |
| *10503 | ENG102 A02 | 20 | Open | 3.0 | | 5 | MAIN CAMPUS | ADMN/205 | ROBINSON LASHONDRA V | 05/25/2018 | 08/07/2018 | M T W TH | 09:10A 10:10A | ENGLISH COMPOSITION II |
| *CANVAS FACE-TO-FACE COURSE | | | | | | | | | | | | | | |
| *10504 | ENG102 A04 | 17 | Open | 3.0 | | 8 | MAIN CAMPUS | ADMN/205 | MOBLEY FANTROY, LINDA | 05/25/2018 | 08/07/2018 | M T W TH | 11:30A 12:30P | ENGLISH COMPOSITION II |
| *CANVAS FACE-TO-FACE COURSE | | | | | | | | | | | | | | |
| *10505 | ENG102 A50 | 16 | Open | 3.0 | | 9 | MAIN CAMPUS | ADMN/202 | MOBLEY FANTROY, LINDA | 05/25/2018 | 08/07/2018 | M & W | 05:30P 07:30P | ENGLISH COMPOSITION II |
| *CANVAS FACE-TO-FACE COURSE | | | | | | | | | | | | | | |
| 10569 | ENG102 TH1 | 15 | Open | 3.0 | | 15 | BSCC THEODORE SITE | THEO/SITE | MOBLEY FANTROY, LINDA | 05/25/2018 | 08/07/2018 | TUESDAY | 05:30P 09:30P | ENGLISH COMPOSITION II |
| 10571 | ENG251 A03 | 7 | Open | 3.0 | | 23 | MAIN CAMPUS | ADMN/206 | KING JULIE C | 05/25/2018 | 08/07/2018 | M & W | 10:20A 12:20P | AMERICAN LITERATURE I |
| 10512 | ENG251 WW | 33 | Open | 3.0 | | 2 | ONLINE | | ROBINSON LASHONDRA V | 05/25/2018 | 08/07/2018 | WEB | WEB | AMERICAN LITERATURE I |
| 10513 | ENG252 WW | 26 | Open | 3.0 | | 4 | ONLINE | | KING JULIE C | 05/25/2018 | 08/07/2018 | WEB | WEB | AMERICAN LITERATURE II |
| *10568 | ENG261 WH1 | 8 | Open | 3.0 | | 17 | MAIN CAMPUS | ADMN/202 | ROBINSON LASHONDRA V | 05/25/2018 | 08/07/2018 | WEB | WEB | ENGLISH LITERATURE I |
| *CLASS MEETS FACE-TO-FACE WEDNESDAY 12:30P - 2:30P | | | | | | | | | | | | | | |
| *10572 | ENG262 WH1 | 4 | Open | 3.0 | | 26 | MAIN CAMPUS | ADMN/202 | ROBINSON LASHONDRA V | 05/25/2018 | 08/07/2018 | TUESDAY | 12:30P 02:30P | ENGLISH LITERATURE II |
| *CLASS MEETS FACE-TO-FACE TUESDAY 12:30P - 2:30P | | | | | | | | | | | | | | |

https://sys.bishop.edu/cgi-bin/DISPCRSESA.MBR/BUILD

1/1

Display Courses

## Display Courses - SU2018

| Call Num | Course | # Enr | Status | Cr Hrs | Mini-Term | Seats Avail | Campus | Bld/Rm | Instructor | Start Date | End Date | Days of Wk | Time | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *10534 | ENG092 A01 | 12 | Open | 3.0 | 1 | 13 | MAIN CAMPUS | ADMN/206 | CROCKETT PATTY | 05/25/2018 | 06/29/2018 | M T W TH | 08:00A 10:00A | BASIC ENGLISH I |
| *MINI-TERM 1 COURSE - 5/25/2018 TO 6/29/2018 | | | | | | | | | | | | | | |
| *10537 | ENG093 A01 | 19 | Open | 3.0 | 2 | 10 | MAIN CAMPUS | ADMN/207 | CROCKETT PATTY | 07/02/2018 | 08/07/2018 | M T W TH | 08:00A 10:00A | BASIC ENGLISH II |
| *MINI-TERM 2 COURSE - 7/02/2018 - 8/07/2018 | | | | | | | | | | | | | | |
| *10495 | ENG093 A03 | 15 | Open | 3.0 | | 10 | MAIN CAMPUS | ADMN/207 | CROCKETT PATTY | 05/25/2018 | 08/07/2018 | M T W TH | 10:20A 11:20A | BASIC ENGLISH II |
| *CANVAS FACE-TO-FACE COURSE | | | | | | | | | | | | | | |
| *10496 | ENG093 A50 | 15 | Open | 3.0 | | 10 | MAIN CAMPUS | ADMN/207 | CROCKETT PATTY | 05/25/2018 | 08/07/2018 | M & W | 05:30P 07:30P | BASIC ENGLISH II |
| *CANVAS FACE-TO-FACE COURSE | | | | | | | | | | | | | | |

# EXHIBIT 4

**Bishop State**                                    Reve' Batley <rbatley@bishop.edu>

---

## Relocation of Classes

6 messages

---

**Adrian Evans** <aevans@bishop.edu>                         Tue, May 29, 2018 at 1:28 PM
To: Lashondra Robinson <lrobinson@bishop.edu>, Julie King <jking@bishop.edu>, Linda Mobley
<lfantroy@bishop.edu>, Dana Escobio <descobio@bishop.edu>, Linda Mobley <lmobley@bishop.edu>, Patty
Crockett <pcrockett@bishop.edu>, Lydia Host <lhost@bishop.edu>, Mary Kimbrough
<mkimbrough@bishop.edu>, Michael Poellnitz <mpoellnitz@bishop.edu>, Catherine Cochran
<ccochran@bishop.edu>, Kim Smith <ksmith@bishop.edu>, Tommi Batley <rbatley@bishop.edu>, Larene
Peeples <lpeeples@bishop.edu>
Cc: Cassie Boatwright <cboatwright@bishop.edu>, Ann Clanton <aclanton@bishop.edu>

Good afternoon, everyone! I certainly hope you enjoyed your break. Please note the attached assignment of
classes for the Humanities Division. All evening classes on campus will relocate to the BTC beginning this
evening. Signage has been posted for those courses, but you may want to make an announcement for your
evening classes in Canvas, as well.

The classes in the Administration Building will also relocate to the BTC this summer. For day classes, please
make note of the room assignments, and prepare to have your students move on Wednesday, June 6, the
day following Attendance Verification.

Should you have additional questions, please contact me or Mrs. Cassie Boatwright. As always, thank you
for your cooperation. Happy Summer!

--ACE
--
Adrian C. Evans, PhD
Chair, Humanities and Fine Arts Division
Bishop State Community College
351 N. Broad Street
Mobile, AL 36603
Phone: (251) 405-7095

---

📄 **Humanities Relocation of Classes.pdf**
160K

---

**Reve' Batley** <rbatley@bishop.edu>                          Tue, May 29, 2018 at 7:01 PM
To: Adrian Evans <aevans@bishop.edu>

Good evening!
I received your email regarding class relocations for the summer, but I still don't see any names assigned to
the classes/schedule. I may have overlooked it somehow, but I only saw "staff" still listed by everything. Didn't
classes begin Friday? When will we know if we have been given any classes for the summer?
Thanks!
Batley
[Quoted text hidden]

---

**Adrian Evans** <aevans@bishop.edu>                          Wed, May 30, 2018 at 9:49 AM
To: Reve' Batley <rbatley@bishop.edu>

Dr. Batley,

I hope you are well. At this point, all classes that made have been assigned. Thank you!

--ACE

[Quoted text hidden]

---

**Reve' Batley** <rbatley@bishop.edu>                                    Wed, May 30, 2018 at 10:05 AM
To: Adrian Evans <aevans@bishop.edu>

Thank you for getting back with me. I was told this morning that they had been assigned in Boris, so I checked there and saw that all of ours made, and they have all indeed been assigned...

My question at this point is if there is any particular reason I was not assigned at least one class since all of the developmental English sections have sufficient numbers? You indicated in the division meeting that you felt we would all have at least one class if the numbers stayed high, so I am wondering if something may have happened that I am not aware of. I know that I did give you notice of my interest in teaching this summer if we had enough classes to make and offer. If I am allowed to ask, is there a reason that I was not offered a class this summer that you are able to tell me? Thanks. —Batley
[Quoted text hidden]

---

**Adrian Evans** <aevans@bishop.edu>                                    Wed, May 30, 2018 at 10:24 AM
To: Reve' Batley <rbatley@bishop.edu>

Yes, Dr. Batley. The senior member of the department requested a full load, and only four classes made. There was not a need to add additional courses as those four only barely made. Thank you!

--ACE
[Quoted text hidden]

---

**Reve' Batley** <rbatley@bishop.edu>                                    Wed, May 30, 2018 at 11:07 AM
To: Adrian Evans <aevans@bishop.edu>

Ok...I understand all of that, and I thought I understood seniority and the summer teaching policy, but maybe not. Patty and I are the only two instructors left in Developmental English, correct? And she and I have equal seniority since we were hired on the same day, correct? So does that mean that full load requests are given priority over parttime requests?

I was never told that part. I just always tried to be fair by not asking for a full load so that we would all be able to have something. I have never asked for a full load for that very reason, but I didn't realize it was to my detriment to not be greedy about summer classes. This is the first time I have ever heard of that. I swear. I guess I should ask you now if there is anything else I need to know for future reference so that I don't miss out on future opportunities? I was just trying to be fair and share the classes with my coworker. I didn't realize that was a bad thing. Why would we have rules like that? Lord have mercy...

If you have any other information about policy and procedure for summer teaching assignments that outline these details, would you please share it with me? I wouldn't appreciate it very much. All I have is what has been published in our handbook and the new draft that Ms. Clanton sent for our review this semester. Neither one mentions anything about full load requests are given priority over part time requests, or if it does, I didn't see it. So I would really appreciate anything that you can send and/or share with me.

I should have known I had to be doing something wrong all of these years that I keep getting passed over for summer classes, but no one ever bothered to tell me why! So thank you! It makes me sad to know it's that way and we can't share the load, but I know we don't get to make the rules. However, I do believe that is definitely one that needs to be revised. No one should be punished for trying to be fair and treat others the way they want to be treated. That just blows my mind and makes no sense to me whatsoever. Then again, there are lots of things that make no sense to me, so my opinion is definitely not a good guage. Apparently! Hahahha

Thank you again for the information. Better late than never I guess! —Batley
[Quoted text hidden]

# EXHIBIT 5

*exempt*

# Alabama Community College System
## Schedule D-1
### Full-time Instructors, Counselors and Librarians
### 2018-2019

| Rank | | Salary Step 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11-26 | | 27 |
|------|--|------|------|------|------|------|------|------|------|------|------|------|------|------|------|
| IV | 9-Month | 53,765 | 55,188 | 56,610 | 58,032 | 59,455 | 60,877 | 62,300 | 63,722 | 65,144 | | 69,412 | 73,679 | 77,946 | 79,368 |
| | Summer | 16,601 | 17,042 | 17,483 | 17,925 | 18,366 | 18,808 | 19,248 | 19,690 | 20,132 | | 21,456 | 22,781 | 24,104 | 24,546 |
| | 12 Month | 70,366 | 72,230 | 74,093 | 75,957 | 77,821 | 79,685 | 81,548 | 83,412 | 85,276 | | 90,868 | 96,460 | 102,050 | 103,914 |
| III | 9-Month | 48,401 | 49,824 | 51,246 | 52,668 | 54,091 | 55,513 | 56,935 | 58,357 | 59,780 | | 63,478 | 67,176 | 70,875 | 72,297 |
| | Summer | 14,941 | 15,382 | 15,824 | 16,265 | 16,706 | 17,147 | 17,589 | 18,032 | 18,473 | | 19,620 | 20,767 | 21,916 | 22,357 |
| | 12 Month | 63,342 | 65,206 | 67,070 | 68,933 | 70,797 | 72,660 | 74,524 | 76,389 | 78,253 | | 83,098 | 87,943 | 92,791 | 94,654 |
| II | 9-Month | 44,496 | 45,918 | 47,340 | 48,763 | 50,185 | 51,607 | 53,029 | 54,452 | 55,875 | | 58,719 | 61,564 | 64,409 | 65,831 |
| | Summer | 13,735 | 14,177 | 14,619 | 15,059 | 15,501 | 15,942 | 16,384 | 16,825 | 17,267 | | 18,150 | 19,032 | 19,915 | 20,357 |
| | 12 Month | 58,231 | 60,095 | 61,959 | 63,822 | 65,686 | 67,549 | 69,413 | 71,277 | 73,142 | | 76,869 | 80,596 | 84,324 | 86,188 |
| IA | 9-Month | 40,590 | 42,012 | 43,435 | 44,857 | 46,280 | 47,701 | 49,124 | 50,547 | 51,969 | | 54,814 | 57,659 | 60,503 | 61,925 |
| | Summer | 12,532 | 12,973 | 13,414 | 13,856 | 14,297 | 14,740 | 15,181 | 15,622 | 16,064 | | 16,946 | 17,829 | 18,711 | 19,153 |
| | 12 Month | 53,122 | 54,985 | 56,849 | 58,713 | 60,577 | 62,441 | 64,305 | 66,169 | 68,033 | | 71,760 | 75,488 | 79,214 | 81,078 |
| IB | 9-Month | 36,686 | 38,108 | 39,530 | 40,953 | 42,376 | 43,797 | 45,220 | 46,642 | 48,065 | | 50,909 | 53,754 | 56,598 | 58,021 |
| | Summer | 11,327 | 11,769 | 12,210 | 12,652 | 13,093 | 13,535 | 13,976 | 14,418 | 14,859 | | 15,742 | 16,624 | 17,507 | 17,950 |
| | 12 Month | 48,013 | 49,877 | 51,740 | 53,605 | 55,469 | 57,332 | 59,196 | 61,060 | 62,924 | | 66,651 | 70,378 | 74,105 | 75,971 |
| IC | 9-Month | 36,686 | 38,108 | 39,530 | 40,953 | 42,376 | 43,797 | 45,220 | 46,642 | 48,065 | | 50,909 | 53,754 | 56,598 | 58,021 |
| | Summer | 11,327 | 11,769 | 12,210 | 12,652 | 13,093 | 13,535 | 13,976 | 14,418 | 14,859 | | 15,742 | 16,624 | 17,507 | 17,950 |
| | 12 Month | 48,013 | 49,877 | 51,740 | 53,605 | 55,469 | 57,332 | 59,196 | 61,060 | 62,924 | | 66,651 | 70,378 | 74,105 | 75,971 |

1. Initial placement on the schedule which gives credit for prior experience outside of public education in Alabama must be approved by the Chancellor. Advancement in steps after the initial placement will be based on years completed in the position.

2. A department or division chairperson shall be paid an additional $400 per month provided that the department or division includes a minimum of three full-time faculty members, with the Chairperson being counted as one of the three (see Policy 606.05).

3. A full-time head librarian shall be paid an additional $400 per month provided that only one person at each institution is designated as head librarian (see policy Number 606.05).

4. Schedule D-1 is to be used to compensate full-time instructors at colleges using a 175-54 calendar.

Case 1:19-cv-01043-CG-MU   Doc# 1   Filed 12/06/19   Page 30 of 101   PageID# 232

# EXHIBIT 6

**CURRENT RECORDS AS OF:** 06/30/2018

OUR RECORDS CONTAIN THE FOLLOWING DATA CONCERNING YOUR ACCOUNT AS OF THE DATE SHOWN ABOVE. IF YOU NOTE ANY OMISSIONS OR DISCREPANCIES, PLEASE WRITE TO: P.O. BOX 302150, MONTGOMERY, AL 36130-2150. IF YOU WRITE, PLEASE BE SPECIFIC IN YOUR QUESTIONS AND INCLUDE YOUR PID OR SOCIAL SECURITY NUMBER AND RETURN ADDRESS. WEBSITE: www.rsa-al.gov TELEPHONE: 1-877-517-0020.

**IMPORTANT NOTICE:** THE INFORMATION CONTAINED ON THIS STATEMENT IS BASED ON DATA PROVIDED BY YOUR EMPLOYER AND HAS NOT BEEN AUDITED BY RSA PERSONNEL. YOU SHOULD NOT MAKE FINAL RETIREMENT DECISIONS WITHOUT HAVING RSA REVIEW YOUR ACCOUNT TO CONFIRM YOUR ELIGIBILITY AND BENEFIT AMOUNT.

## PERSONAL

```
- - - - - - MEMBER INFORMATION - - - - -              - - - - - BENEFICIARY INFORMATION - - - - - -
            NAME:  BATLEY TOMMI R                      BATLEY MARY D
   SEX / BIRTH DATE:  FEMALE XX/XX/1972                FEMALE XX/XX/1949
      ACCOUNT #:  495719
 SOCIAL SECURITY #:  XXX-XX-2426
           PID:  10024492                    Note: Your personal identification number or PID allows you
     ENTRY DATE:  11/01/1997                 to access your TRS, PEEHIP, and RSA-1 accounts through our
  RETIREMENT PLAN:  TIER1                     member online services at www.rsa-al.gov.
```

## MEMBER CONTRIBUTIONS

|  | PREVIOUSLY TAXED CONTRIBUTIONS | NON-TAXED CONTRIBUTIONS | INTEREST | BALANCE |
|---|---|---|---|---|
| CURRENT YEAR CONTRIBUTIONS (JULY 1 - JUNE 30) | 0.00 | 5,668.94 | 3,619.91 | |
| ACCOUNT BALANCE | 0.00 | 69,768.19 | 27,183.92 | 96,952.11 |

## CREDITABLE SERVICE BY CATEGORY (YEARS AND MONTHS)

| MEMBERSHIP | PRIOR | FLC[1] | PURCHASED | TRANSFERRED | TOTAL* | VESTED* |
|---|---|---|---|---|---|---|
| 20-11 | | | | | 20-11 | YES |

## LAST TEN YEAR SERVICE HISTORY

| SCHOOL YEAR | | CALCULATED EARNINGS* | CONTRIBUTIONS | SERVICE CREDIT* |
|---|---|---|---|---|
| 2008-2009 | | 53,223 | 2,661.14 | 01-00 |
| 2009-2010 | | 58,970 | 2,948.52 | 01-00 |
| 2010-2011 | | 67,396 | 3,369.82 | 01-00 |
| 2011-2012 | 5.00% Rate | | 813.93 | |
| | 7.25% Rate | | 3,778.56 | |
| 2011-2012 Totals: | | 68,397 | 4,592.49 | 01-00 |
| 2012-2013 | 7.25% Rate | | 1,423.40 | |
| | 7.50% Rate | | 4,155.02 | |
| 2012-2013 Totals: | | 75,033 | 5,578.42 | 01-00 |
| 2013-2014 | | 78,388 | 5,879.12 | 01-00 |
| 2014-2015 | | 78,545 | 5,890.90 | 01-00 |
| 2015-2016 | | 72,679 | 5,450.92 | 01-00 |
| 2016-2017 | | 73,273 | 5,495.47 | 01-00 |
| 2017-2018 | | 75,586 | 5,668.94 | 01-00 |

If address is incorrect, please return an address change form available from your payroll clerk.

For an excellent way to reduce your federal income taxes consider RSA-1, the RSA deferred compensation plan. Call (334) 517-7000 or 1-877-517-0020 for additional information.

ALL ITEMS WITH AN ASTERISK (*) ARE SUBJECT TO AUDIT.

1. FLC IS ENHANCED SERVICE AS A LAW ENFORCEMENT OFFICER, CORRECTIONAL OFFICER, OR FIREFIGHTER ELIGIBLE FOR HAZARDOUS DUTY TIME UPON RETIREMENT.

**RETIREMENT ESTIMATES REPORT**

FOR: TOMMI R BATLEY

**REQUESTED ESTIMATE**
**DATE 02/26/2018**

THE RETIREMENT PLANS

The figures below represent the approximate benefits you are eligible to receive if you retire on the Retirement Date shown. In order to retire, you must submit a retirement application so that it is received no less than 30 days nor more than 90 days prior to the effective date of your retirement.

**MAXIMUM RETIREMENT ALLOWANCE**

$3,249.60   per month for the remainder of your life, all benefits ceasing at your death.

**OPTION I**

$3,240.93   per month for the remainder of your life.

$134,114.13   is the total amount of your annuity savings at the time of your retirement.

$913.72   is the rate per month that you will use up your annuity savings. If you should die before you have received all of your annuity savings, any unpaid balance will be paid to your designated beneficiary in a lump sum.

146   is the number of months you must survive in order to use up the total amount of your annuity savings based on the amount of your benefit at the current time.

**OPTION II**

$3,207.03   per month for the remainder of your life, and upon your death,

$3,207.03   per month will be paid to your beneficiary for the remainder of your beneficiary's life, if your beneficiary survives you.

**OPTION III**

$3,228.15   per month for the remainder of your life, and upon your death,

$1,614.08   per month will be paid to your beneficiary for the remainder of your beneficiary's life, if your beneficiary survives you.

**DATA USED IN THE CALCULATION OF YOUR BENEFIT**

(468 hrs)

ESTIMATE INCLUDES 01 DAYS
UNUSED ACCRUED SICK LEAVE

| | |
|---|---|
| MARY D BATLEY | Name of your beneficiary. |
| FEMALE | Sex of your beneficiary. |
| 11/02/1949 | Date of Birth of your beneficiary. |
| SERVICE | Retirement Type. |
| 04/01/2022 | Retirement Date. |
| 10/09/1972 | Date of Birth. |
| 0-00 | Prior Service credit (y/m). |
| 25-00 | Membership Service credit (y/m). |
| 25-00 | Total Service credit (y/m). |
| $134,114.13 | Total of your Contributions and Interest. |
| $77,506.00 | Average Final Salary. |
| XXX-XX-2426 | Social Security Number. |

NOTE: If you elect to receive your benefit under the provisions of either the Maximum Allowance or Option I, you may change your beneficiary at a later date by properly executing a Change of Beneficiary form and submitting it to this office. If you elect to receive your benefits under the provisions of either Option II or Option III, you cannot, after the effective date of your retirement, name another beneficiary to receive the monthly survivor benefit payable at your death unless your beneficiary predeceases you or there is a divorce between you and the beneficiary. Please report the death of your beneficiary to RSA.

TRS 495719    0010024492
TOMMI R BATLEY

1119 SELMA ST
MOBILE AL   36604

https://smartasset.com/retirement/alabama-retirement-system

# Alabama Retirement System | Pension Info, Taxes, Financial Health

**as**set™

Tap on the profile icon to edit
your financial details.



A retirement system is an organization that helps government workers save for retirement. It then helps distribute the money, in the form of a pension, to retirees. Each state has a retirement system, but they vary in size and complexity. The organization that runs the systems in Alabama is called the Retirement Systems of Alabama. According to a 2017 report, there are more than 300,000 people participating in the state's retirement plans and they earned about $3 billion worth of benefits in 2017. Read on to learn more about the ins and outs of the Alabama retirement system. And if you want hands-on guidance in your own planning, check out SmartAsset's free matching tool to pair up with a financial advisor.

## Types of Retirement Systems in Alabama

There are three main retirement systems in Alabama. Each is a defined contribution plan, which means that employees contribute a certain percentage of each paycheck to the account. The money grows tax deferred and once you retire, you will receive a set benefit each month. Alabama's retirement plans qualify as a 401(a) plan.

Each plan is available to different types of employees, depending on your profession. Many full-time, regular, public employees are eligible for the Employees' Retirement System (ERS). If you are eligible, you must participate in the system. The other two systems apply specifically to teachers and judicial employees.

You can see which employees are eligible for each plan in the table below:

https://smartasset.com/retirement/alabama-retirement-system

| Alabama Retirement Systems | |
| --- | --- |
| Plan Title | Eligible Employees |
| Employees' Retirement System (ERS) | — Covers most public employees, including law enforcement officials, and some elected officials<br>— Tier 1 members joined plan before January 1, 2013. Tier 2 members joined on or after January 1, 2013 |
| Teachers' Retirement System (TRS) | — Public teachers<br>— Tier 1 members joined plan before January 1, 2013. Tier 2 members joined on or after January 1, 2013 |
| Judicial Retirement Fund (JRF) | — Justices, judges, circuit clerks and district attorneys |

# Overview of Alabama's Retirement Systems



**Employees' Retirement System (ERS)** — This plan is available for the majority of public employees in Alabama. Certain officials also qualify for the system.

The official qualification for the ERS is that you work on a non-temporary basis for at least 20 hours per week. In addition, you earn at least the minimum wage. Temporary employees who have a specific termination date for their job do not qualify. The only exception is if your temporary position is more than a year long. You have to opt into the ERS at the beginning of your second year of temporary work.

All members of this retirement system need to contribute a certain percentage of their salary to the system. The amount you contribute depends on your exact position and how long you've been a member of the ERS. There are two tiers of members. Tier 1 members joined the state's retirement systems (ERS or another system) before January 1, 2013. Tier 2 members joined the ERS on or after January 1, 2013.

For Tier 1 members, the contribution amount for regular state employees is 7.5% of your compensation. The percentage is higher, at 8.5%, for full-time, certified, state firefighters, correctional officers and law enforcement officers.

https://smartasset.com/retirement/alabama-retirement-system

Tier 2 members contribute to the system at lower levels. The contribution level is 6% of compensation for regular state and local employees. Full-time, certified, state and local firefighters, correctional officers and law enforcement officers contribute at a level of 7%.

You can only qualify for the lifetime retirement benefits when you reach vested status. Vesting simply means that you have worked long enough as a part of the system to receive benefits. The minimum for vesting is 10 years' worth of creditable service. This translates to the equivalent of 10 years of full-time work as part of the ERS.

If you have at least 10 years of creditable service and are at least age 60, you can begin to receive the lifetime retirement benefits. You can also begin to receive benefits at any age if you have 25 or more years of creditable service. You will receive your benefits monthly for your lifetime. In some cases, your beneficiaries can receive your benefits after your death.

The ERS determines the exact amount of your retirement benefit using a formula:

Maximum Monthly Benefit = Average Final Salary x Years of Creditable Service x Benefit Factor ÷ 12

The average final salary is the average of the highest three annual salaries that you earned within your final 10 years of work. Partial years count for this calculation.

The number of years of creditable service you have includes partial years. For example, 20 years and six months of creditable service would equal 20.5 years of service for the sake of the formula above.

The benefit factor is 2.0125% for most employees and 2.875% for state police.

**Teachers' Retirement System (TRS)** – This system works the same as the ERS in most ways. For example, there are two tiers for members. And the retirement benefit formula is the same. The major difference is that the TRS is specifically for public school teachers.

Members of the TRS also have access to a health insurance plan called the Public Education Employees' Health Insurance Plan (PEEHIP). This plan is available for full-time employees who work in a public education institution. Enrollment in this plan is not a requirement. Still, it can certainly help members to lower their medical costs.

**Judicial Retirement Fund (JRF)** – All justices, judges, circuit clerks and district attorneys must become members of the JRF if they were elected or appointed on or later than November 8, 2016. Members contribute 8.5% of their compensation to the JRF.

How you calculate your retirement benefit will depend on your exact position. For city clerks and district attorneys, you can calculate your maximum retirement benefit with the following equation.

Maximum Monthly Benefit = Average Final Salary x Years of Service x 3% ÷ 12

Note that your maximum benefit cannot exceed 80% of your final average salary. Partial years also count toward your years of service (e.g. six months would be 0.5 years).

Justices and judges earn slightly larger benefits. In the equation above, simply replace 3% with 4% when you calculate your benefit. Note that your maximum benefit cannot exceed 75% of your average salary. If you have accrued 18 years of creditable service in the JRF as a judge or clerk, your retirement benefit is equal to 75% of your average final salary.

# Retirement Taxes in Alabama

### Federal

The contributions you make to the retirement systems are tax-deferred. You do not pay taxes on that money until you receive them as distributions in retirement. There are a couple of ways that you can pay

# EXHIBIT 7

From:The UPS Store 3750A Airport      2514605943      11/27/2018 20:12      #610 P.001/003



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**CHARGE OF DISCRIMINATION**

For Official Use Only – Charge Number:

EEOC Form 5A (October 2017)

| Personal Information | First Name: TOMMI    MI: R    Last Name: BATLEY<br>Address: 1119 Selma Street    Apt.: _____<br>City: MOBILE    County: MOBILE    State: AL  Zip Code: 36604<br>Phone: 366-2358  Home ☐ Work ☐ Cell ☒ Email: rbatley@bishop.edu |
|---|---|
| Who do you think discriminated against you? | Employer ☒    Union ☐    Employment Agency ☐    Other Organization ☐<br>Organization Name: BISHOP STATE COMMUNITY COLLEGE<br>Address: 351 North Broad Street    Suite: _____<br>City: MOBILE    State: AL  Zip Code: 36603  Phone: 405-7052 |
| Why you think you were discriminated against? | Race ☒  Color ☐  Religion ☐  Sex ☐  National Origin ☐  Age ☐<br>Disability ☐  Genetic Information ☐  Retaliation ☒  Other ☐ (specify) |
| What happened to you that you think was discriminatory? | Date of most recent job action you think was discriminatory: JUNE 5, 2018<br>Also describe briefly each job action you think was discriminatory and when it happened (estimate).<br>Please see attached complaint details for additional information. I based the date of this action on or about the date when I knew for certain that I would not receive a Summer employment contract from Human Resources. Our meeting had to be rescheduled due to her absence. |
| Signature and Verification | I understand this charge will be filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address, phone, or email. I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I understand by signing below that I am filing a charge of employment discrimination with the EEOC. I understand that the EEOC is required by law to give a copy of the charge, which includes my allegations and my name, to the organization named above. I also understand that the EEOC can only investigate charges of job discrimination based on race, color, religion, sex, national origin, age, disability, genetic information, or based on retaliation for filing a charge of job discrimination, participating in an investigation of a job discrimination complaint, or opposing job discrimination.<br><br>I declare under penalty of perjury that the above is true and correct.<br>Signature: _____    Date: 11/27/2018 |

EEOC Mobile Local Office

NOV 2 7 2018

RECEIVED
RECEIVED

From:The UPS Store 3750A Airport          2514805943                    11/27/2018 20:13      #610 P.002/003

**EEOC Complaint Details for Ongoing Retaliation and Discrimination**

**with most recent event taking place on/after June 5, 2018  (2 Pages total)**

After making numerous complaints to administrators and supervisors as well as filing more than one EEOC complaint against Bishop State Community College for reverse race discrimination, harassment, and retaliation, I, Tommi R. Batley, continue to be subjected to even worsening retaliation and ongoing reverse race discrimination by my immediate supervisor (Adrian Evans) and administrators at the college who have failed to address and correct the unjust, disparate treatment I have received in violation of my right to be free from workplace discrimination and retaliation.

All of which has resulted in a significant loss of income for me in addition to other collateral damages that have resulted from the ongoing mental and emotional distress and humiliation. I have needed to seek medical treatment and mental health counseling as a result of the discriminatory treatment and retaliation I have been forced to endure at my workplace.

EEOC Mobile

NOV 2 7 2018

RECEIVED

Among other things, I have specifically incurred significant loss of income on numerous occasions due to unfair assignment of summer employment contracts, including but not limited to Summer semester 2018 when a full time summer employment contract was given to a Black female instructor (Patty Crockett), but no offer for full or part time summer employment was given to me; even though, according to the college's published policy and procedure, I should have been afforded an equal opportunity for summer employment just as Crockett was given.

Furthermore, to attempt to justify her decision to not offer a summer employment contract to me, my supervisor informed me that the Black female instructor (Crockett) had seniority over me which was not

EEOC Mobile Local Office
NOV 2 7 2018

RECEIVED
RECEIVED

From:The UPS Store 3750A Airport        2514605943            11/27/2018 20:13      #610 P.003/003

true. Crockett and I were both interviewed, hired, and began work as full time instructors on the same day in the exact same position in August 2006. When I informed my supervisor of this, Evans refused any further acknowledgement or response to my comments or inquiries, nor did she make any changes to the summer teaching assignments/contracts.

As a result of my supervisor's refusal to respond or address the matter any further, I immediately contacted the director of human resources (Marquita Lyons) to request a meeting to discuss the matter of summer employment contracts and seniority and to seek assistance and a remedy to the unjust assignment of summer contracts. Lyons scheduled a meeting with me for Friday, June 1, 2018, but when I arrived, Lyons was not there. I subsequently emailed Lyons to request to reschedule the meeting, and it was rescheduled for June 5, 2018.

EEOC Mobile

NOV 2 9 2018

RECEIVED

After finally meeting with Lyons, I was still not offered a summer employment contract like my coworker was given. Even though Crockett and I both had the exact same contract periods (starting and ending dates) when we were hired as full time instructors, I was told that Crockett had seniority when clearly she did not.

The unjust, disparate treatment and actions of Bishop State Community College, including but not limited to those of my immediate supervisor and administrators at the college, were done willfully and intentionally on the basis of my race and in violation of my right to be free from workplace discrimination and retaliation pursuant to the Civil Rights Act of 1964.

Date ___11/27/2018___

Tommi Reve Batley



**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**INTAKE QUESTIONNAIRE**

425-2019-
00203

Please immediately complete the entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). **REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, generally within 180 days or in some places 300 days of the alleged discrimination. Upon receipt, this form will be reviewed to determine EEOC coverage. Answer all questions as completely as possible, and attach additional pages if needed to complete your response(s). If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "n/a." Please Print.**

**1.   Personal Information**

Last Name: Batley                          First Name: Tommi                    MI: Reve        NOV 2 8 2018

Street or Mailing Address: 1119 Selma Street                                          Apt Or Unit #:

City: Mobile                    County: Mobile                    State: AL          ZIP: 36604    RECEIVED

Phone Numbers: Home: ( 251 ) 6941796                    Work: ( 251 ) 3662358

Cell: ( 251 ) 3662358                    Email Address: rbatley@bishop.edu

Date of Birth: 100972              Sex: Male ☐   Female ☒   Do You Have a Disability?   ☐ Yes   ☒ No

**Please answer each of the next three questions.**   i. Are you Hispanic or Latino?   ☐ Yes   ☒ No

ii. What is your Race? Please choose all that apply.   ☐ American Indian or Alaska Native   ☐ Asian   ☒ White

☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)? USA

**Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:**

Name: Jeff Deen                                  Relationship: Attorney

Address: 207 Church Street                    City: Mobile                    State: AL  Zip Code: 36603

Home Phone: (    )                    Other Phone: ( 251 ) 4335860

**2.  I believe that I was discriminated against by the following organization(s):** (Check those that apply)

☒ Employer   ☐ Union   ☐ Employment Agency   ☐ Other (Please Specify)

**Organization Contact Information (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) If more than one employer is involved, attach additional sheets.**

Organization Name:  Bishop State Community College

Address: 351 North Broad Street                    County: Mobile

City: Mobile                    State: AL  Zip:   36603        Phone: ( 251 ) 4057000

Type of Business: College                    Job Location if different from Org. Address:

Human Resources Director or Owner Name: Marquita Lyons, Director of Human Resources        Phone: 251-4057052

**Number of Employees in the Organization at All Locations: Please Check (√) One**

☐ Fewer Than 15   ☐ 15 - 100   ☐ 101 - 200   ☒ 201 - 500   ☐ More than 500

**3.  Your Employment Data (Complete as many items as you can)    Are you a Federal Employee?   ☐ Yes ☐ No**

Date Hired: August 15, 2006                    Job Title At Hire: English Teacher

Pay Rate When Hired: NA                    Last or Current Pay Rate: NA

Job Title at Time of Alleged Discrimination: English Teacher            Date Quit/Discharged: NA

Name and Title of Immediate Supervisor: Adrian Evans, Chair of Division of Humanities

2

**If Job Applicant, Date You Applied for Job** _____    **Job Title Applied For** _____

**4. What is the reason (basis) for your claim of employment discrimination?**
*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☒ Race    ☐ Sex   ☐ Age   ☐ Disability    ☐ National Origin   ☐ Religion   ☒ Retaliation    ☐ Pregnancy   ☐ Color (typically a difference in skin shade within the same race)   ☐ Genetic Information; choose which type(s) of genetic information is involved:

☐ i. genetic testing    ☐ ii. family medical history    ☐ iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: _____

If you checked genetic information, how did the employer obtain the genetic information? _____

Other reason (basis) for discrimination (Explain). _____

**5. What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. **Please attach additional pages if needed.**
*(Example: 10/02/06 - Discharged by Mr. John Soto, Production Supervisor)*

A) Date: ~June 5, 2018    Action: Summer Semester 2018 *Please see attached complaint for additional details.* My date of action is based on the date I met with HR for a determination on the matter.

Name and Title of Person(s) Responsible: Marquita Lyons, Director of Human Resources; Adrian Evans, Supervisor.

B) Date:    Action:

Name and Title of Person(s) Responsible:

**6. Why do you believe these actions were discriminatory?** Please attach additional pages if needed.
Please see attached complaint.

EEOC Mobile Local Office

NOV 2 8 2018

RECEIVED

**7. What reason(s) were given to you for the acts you consider discriminatory?** By whom? His or Her Job Title?
Please see attached complaint.

**8. Describe who was in the same or similar situation as you and how they were treated.** For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on. Use additional sheets if needed.

Of the persons in the same or similar situation as you, who was treated *better* than you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Patty Crockett | Black, female, approximate same age | Same/English Teacher |

Description of Treatment *Please see attached complaint for additional details and explanation.* Crockett was given a full time summer employment contract, and I was not offered either a full or part time summer employment contract.

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

3

**Of the persons in the same or similar situation as you, who was treated *worse* than you?**

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

**Of the persons in the same or similar situation as you, who was treated the *same* as you?**

| A. Full Name | Race, sex, age, national origin, religion on disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

Answer questions 9-12 <u>only</u> if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.

9.  Please check all that apply:

☐  Yes, I have a disability

☐  I do not have a disability now but I did have one

☐  No disability but the organization treats me as if I am disabled

10. What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything? (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

11. Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?

Yes ☐     No ☐

If "Yes," what medication, medical equipment or other assistance do you use?

12. Did you ask your employer for any changes or assistance to do your job because of your disability?

Yes ☐     No ☐

If "YES", when did you ask? _____     How did you ask (verbally or in writing)? _____

Who did you ask? (Provide full name and job title of person)

Describe the changes or assistance that you asked for:

EEOC Mobile Local Office
NOV 2 8 2018
RECEIVED

How did your employer respond to your request?

4

**13. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)**

| A. Full Name | Job Title | Address & Phone Number |
|---|---|---|
| | | |

**What do you believe this person will tell us?**

| B. Full Name | Job Title | Address & Phone Number |
|---|---|---|
| | | |

**What do you believe this person will tell us?**

EEOC Mobile Local Office

**14. Have you filed a charge previously in this matter with EEOC or another agency?** Yes ☒ No ☐

NOV 2 8 2018

**15. If you have filed a complaint with another agency, provide name of agency and date of filing:**
Filed lawsuit against the college in Spring 2018.

RECEIVED

**16. Have you sought help about this situation from a union, an attorney, or any other source?** Yes ☒ No ☐
Provide name of organization, name of person you spoke with and date of contact. Results, if any?
Consulted attorneys who have encouraged me to continue to file complaints with EEOC as the retaliation and discrimination continues.

**Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.**

Box 1 ☐ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

Box 2 ☒ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

_____      November 27, 2018
Signature                                   Today's Date

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974; Public Law 93-579. Authority for requesting personal data and the uses thereof are
1. FORM NUMBER/TITLE/DATE, EEOC Intake Questionnaire (9/20/08)
2. AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626, 42 U.S.C. 12117(a), 42 USC §2000ff-6.
3. PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge.
4. ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters
5. WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge It is not mandatory that this form be used to provide the requested information

# EXHIBIT 8



# U.S. Equal Employment Opportunity Commission
## Mobile Local Office

63 S Royal Street
Suite 504
Mobile, AL 36602
(251) 690-2590
TTY (251) 690-2579
Fax: (251) 690-2581

Respondent: BISHOP STATE COMMUNITY COLLEGE
EEOC Charge No.: 425-2019-00203

December 6, 2018

Tommi R. Batley
1119 Selma Street
Mobile, AL 36604

Dear Ms. Batley:

This is with reference to your recent written correspondence or intake questionnaire in which you alleged employment discrimination by the above-named respondent. The information provided indicates that the matter complained of is subject to the statute(s) checked off below:

[X]    Title VII of the Civil Rights Act of 1964 (Title VII)

[ ]    The Age Discrimination in Employment Act (ADEA)

[ ]    The Americans with Disabilities Act (ADA)

[ ]    The Equal Pay Act (EPA)

[ ]    The Genetic Information Nondiscrimination Act (GINA)

The attached EEOC Form 5, Charge of Discrimination, is a summary of your claims based on the information you provided. Because the document that you submitted to us constitutes a charge of employment discrimination, we have complied with the law and notified the employer that you filed a charge. Before we investigate your charge, however, you must sign and return the enclosed Form.

To enable proper handling of this action by the Commission you should:

(1) Review the enclosed charge form and contact me if corrections are needed.

(2) Sign and date the charge in the bottom left hand block where I have made an "X". For purposes of meeting the deadline for filing a charge, the date of your original signed document will be retained as the original filling date.

(3) Return the signed charge to this office.

Before we initiate an investigation, we must receive your signed Charge of Discrimination (EEOC Form 5). Please sign and return the charge within thirty (30) days from the date of this letter. Under EEOC procedures, if we do not hear from you within 30 days or receive your signed charge within 30 days, we are authorized to dismiss your charge and issue you a right to sue letter allowing you to pursue the matter in federal court.

Please use the "EEOC Charge No." listed at the top of this letter whenever you call us about this charge. Please also notify this office of any change in address or of any prolonged absence from home. Failure to cooperate in this matter may lead to dismissal of the charge.

Please also read the enclosed brochure, "What You Should Know Before You File A Charge With EEOC," for answers to frequently asked questions about employee rights and the EEOC process. If you have any questions, please call me at the number listed below. If you have to call long distance, please call collect.

Sincerely,

JOHN J. BYRD
Investigator
(251) 690-2409

Office Hours: Monday – Friday, 8:00 a.m. - 4:00 p.m.
www.eeoc.gov

Enclosure(s)
    Copy of EEOC Form 5, Charge of Discrimination
    Copy of EEOC Online Charge Status System Tip Sheet

https://outlook.live.com/mail/0/search/id/AQMkADAwATExADU5Ny00YzRjLWQyYzEtMDACLTAwCgBGAAADBsSwBLcEwUWu3b...

## Voicemail message

Revé Batley

Mon 1/28/2019 2:37 PM

To: maria.wilder@eeoc.gov <maria.wilder@eeoc.gov>

Hello again Ms. Wilder, and thank you for the follow up phone call. I realize you guys are just now getting back to work and have extensive catch up to do. That's completely understandable. I just wanted to make sure I wasn't falling into one of those "technicality loopholes" that the EEOC is famous for finding and had gotten booted without my knowledge. Meaning, I just do not/did not want to be penalized/punished for not being able to submit the document by the deadline requested due to the government shutdown. I realize you are new to the team, but I have not had very good experiences with the EEOC process. None of that is or has been your fault, so please don't take my comments that way. It's just very frustrating when an agency and process is in place supposedly to help protect and enforce equal rights and fair treatment for everyone, but that's the farthest thing from what actually happens. Again, not your fault. You are not a lawmaker or policy maker. Nor am I. Unfortunately! Thank you again, and hopefully I will hear back from the investigator when he gets caught up.

Have a great day!
Revé Batley

https://outlook.live.com/mail/0/search/id/AQMkADAwATExADU5Ny00YzRjLWQyYzEtMDACLTAwCgBGAAADBsSwBLcEwUWu3b...

# Mail - Revé Batley - Outlook

I forwarded your message to Mr. Byrd as he is the assigned investigator.  He is out of the office today and should return tomorrow.

Please feel free to contact him directly. 251-690-2409

**From:** Revé Batley [mailto:trbatley@hotmail.com]
**Sent:** Wednesday, January 30, 2019 1:35 PM
**To:** MARIA WILDER <MARIA.WILDER@EEOC.GOV>
**Cc:** Revé Batley <trbatley@hotmail.com>
**Subject:** Tommi R. Batley Complaint

Good afternoon Ms. Wilder,

I received your voicemail and written correspondence yesterday. I have still not heard anything from investigator Byrd. However, I am attaching a copy of the revisions that I would like made to my complaint/charge. As you will see, it wasn't a snow simple as just crossing out one or two things and adding a word here or there. That is why I felt that it was so important to talk to Mr. Byrd before I returned the signed document—to make sure this was acceptable.

I will be at work today until after you close and will not have access to a fax machine either, so it will be tomorrow after lunch before I can hand deliver a hard copy of this statement to your office.

That being said, if Mr. Byrd, or whomever, would like to proceed with making these changes to the charge on  form 5 to have it ready for my signature, that will be fine with me, and/or it can be emailed to me and I will approve, sign, and deliver tomorrow. Whatever is easiest on your end.

I just thought I would go ahead and send this to you so that you would be able to see why this wasn't exactly a simple, easy fix for me.

Thanks again for your prompt and courteous attention to this matter.

Have a great day!

Revé Batley

Charge of Discrimination filed with EEOC                    Charge No: 425-2019-00203

I have worked for Respondent since August 2006 as an English Instructor. On or about June 2018, I was informed that I would not be allowed to teach during the summer semester. This action was in retaliation for me filing previous EEOC complaints against Respondent and not only resulted in a significant monetary loss to me in my annual salary, but it will continue to adversely impact my income for the rest of my life.

I was informed by Ms. Lyons (Black/HR Director) and Ms. Adrian Evans (Black/Supervisor) that summer classes were assigned based on seniority. Ms. Crockett (Black/English Instructor) was allowed to teach a full time schedule, consisting of four classes, while I was not allowed to teach any classes. However, I was hired the same day as Ms. Crockett in 2006 and should have equal seniority and equal opportunities for employment.

As a result of the disparate treatment and action of Respondent, not only did I lose income in the amount of a full time summer salary, but I will continue to suffer a monetary loss for the rest of my life. My retirement income is based on an average of my three highest years' salary, and I am currently within three years of my retirement date. This disparate action by Respondent has compounded adverse consequences for me. Unjustly losing a portion of one's annual salary, even once, is bad enough, but this financial loss will be multiplied over the years to come and will continue to impact me for the rest of my life.

I have been the victim of ongoing racial discrimination and retaliation in violation of Title VII Civil Rights Act of 1964, as amended.

I, Tommi R. Batley, declare under penalty of perjury that the above complaint is true and correct, and I want this charge filed with the EEOC as well as any State and/or local Agency.

_____ Charging party signature          Date_____January 30, 2019_____

Tommi R. Batley

EEOC MOBILE
JAN 3 0 2019
RECEIVED

# EXHIBIT 9

# WAIDE & ASSOCIATES, P.A.
## ATTORNEYS AND COUNSELORS AT LAW

JIM WAIDE
· LUTHER C. FISHER, IV
RON L. WOODRUFF

MAILING ADDRESS:
POST OFFICE BOX 1357
TUPELO, MISSISSIPPI 38802-1357
TELEPHONE: 662.842.7324
FACSIMILE: 662.842.8056
EMAIL: waide@waidelaw.com

STREET ADDRESS:
332 NORTH SPRING STREET
TUPELO, MISSISSIPPI 38804-1357

November 24, 2008 - VIA FACSIMILE

Ms. Erica LeCour
Local Office Director
U.S. Equal Employment Opportunity Commission
63 South Royal Street, Suite 504
Mobile, Alabama 36602

   Re: Tommi Reve Batley
     Charge Number: 425-2008-00787

Dear Ms. LeCour:

  Please find enclosed Ms. Reve Batley's EEOC Form 154 and attached letter dated October 22, 2008 from Dr. James Lowe, Jr., President of Bishop State Community College. The letter sets forth a settlement agreement between the College and Ms. Batley. Copies of these documents have already been mailed to your office.

  In submitting this documentation, Ms. Batley acknowledges that her contract has been renewed with the College, and she has accepted the settlement and agreement set forth in the letter dated October 22, 2008. In doing so, Ms. Batley withdraws her discrimination charge against the College and wishes to dismiss this matter.

  Thank you for your attention and assistance with this matter. If you should need anything further from my office, please do not hesitate to contact me or Ms. Batley directly.

  With kindest regards, I am,

               Sincerely yours,

               Jim Waide

JDW/jly
cc: Jeffery G. Miller
  Dr. James Lowe
  Tommi Reve Batley

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s) |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 425-2017-00181 and EEOC |

| Name (indicate Mr., Ms., Mrs.) | State or local Agency, if any |
|---|---|
| Ms. Tommi R. Batley | |

| Street Address | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| 1119 Selma Street, Mobile, AL 36604 | (251) 366-2358 | 1972 |

City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| BISHOP STATE COMMUNITY COLLEGE | 201 - 500 | (251) 405-7000 |

| Street Address | City, State and ZIP Code |
|---|---|
| 351 North Broad Street, Mobile, AL 36604 | |

EEOC Mobile Local Office

NOV 29 2016

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State RECEIVED Code |
|---|---|

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 08-01-2016 | 08-01-2016 |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by the Respondent in August 2006 as an English Instructor. In or around August 01, 2016, I was subjected to disparate terms and conditions of employment by Roxanne Hannon-Odom (Department Chair, Black) because of my race (White), and in retaliation for complaining about different treatment.

The disparate terms and conditions included, but were not limited to, unequal class schedules and class assignments. Hannon-Odom assigned me two different courses scheduled at the same exact time, and assigned me Friday eight a.m. classes every semester. Patty Crockett (English Instructor, Black) was never assigned Friday eight a.m. classes, or two simultaneous different classes. I informed the Respondent of the disparate treatment; however, no action was taken to correct the disparity.

I was discriminated and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Nov 29, 2016      _signature_ | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date           Charging Party Signature | |

 



**U.S. Equal Employment Opportunity Commission**
**Mobile Local Office**
63 S Royal Street
Suite 504
Mobile, AL 36602

## <u>NOTICE OF CHARGE OF DISCRIMINATION</u>

(This Notice replaces EEOC FORM 131)

### DIGITAL CHARGE SYSTEM

December 2, 2016

To: BISHOP STATE COMMUNITY COLLEGE
351 North Broad Street
Mobile, AL 36604

This is notice that a charge of employment discrimination has been filed with the EEOC against your organization by Tommi R. Batley, under: Title VII of the Civil Rights Act (Title VII). The circumstances of the alleged discrimination are based on Retaliation and Race, and involve issues of Assignment and Terms/Conditions that are alleged to have occurred on or about Aug 01, 2016.

The Digital Charge System makes investigations and communications with charging parties and respondents more efficient by digitizing charge documents. The charge is available for you to download from the EEOC Respondent Portal, EEOC's secure online system.

Please follow these instructions to view the charge within ten (10) days of receiving this Notice:

1. Access EEOC's secure online system: **https://nxg.eeoc.gov/rsp/login.jsf**
2. Enter this EEOC Charge No.: **425-2017-00181**
3. Enter this temporary password: **WT8873UL**

Once you log into the system, you can view and download the charge, and electronically submit documents to EEOC. The system will also advise you of possible actions or responses, and identify your EEOC point of contact for this charge.

# EXHIBIT 10

Windy Cockrell Bitzer
Direct Dial (251) 694-6263
Direct Fax (251) 544-1604
wbitzer@handarendall.com

# HAND ARENDALL HARRISON SALE LLC

104 SAINT FRANCIS STREET, SUITE 300 ⬝ MOBILE, ALABAMA 36602 ⬝ (251) 432-5511
Post Office Box 123 ⬝ Mobile, Alabama 36601 ⬝ Facsimile: (251) 694-6375

March 22, 2019

**Via EEOC Digital Portal**

Ms. Erika LaCour
Local Office Director
United States Equal Employment
  Opportunity Commission
63 S. Royal Street, Suite 504
Mobile, Alabama 36602

Re:  Tommi Reve Batley v. Bishop State Community College
     EEOC Charge No. 425-2019-00230
     **Respondent's Position Statement and Response to Request for Information**

Dear Ms. LaCour:

I represent Bishop State Community College (hereinafter "Bishop State" or "College") and submit on its behalf this position statement in response to the charge of race discrimination and retaliation filed by Tommi Reve Batley.[1] The College's response to the EEOC's request for information is also included herein.

Ms. Batley's charge is untimely and the EEOC should dismiss it for lack of jurisdiction. Even so, and as more fully discussed below, Ms. Batley was not discriminated or retaliated against in connection with summer employment in 2018 and her charge should be dismissed for lack of probable cause.

---

[1] By this submission, Bishop State does not waive any rights, defenses, or objections, procedural or substantive, that it might have in this matter. Nor does Bishop State in any way intend to waive its right to present new or additional facts or arguments based on subsequently acquired information. Further, any information submitted regarding other employees or internal matters is confidential and submitted for the sole purpose of responding to this charge. Certain exhibits are marked "Confidential." Finally, while believed in good faith to be true and correct in all respects, this Position Statement does not constitute a sworn affidavit.

MOBILE  ⬝  BIRMINGHAM  ⬝  ATHENS  ⬝  FAIRHOPE
DESTIN  ⬝  PANAMA CITY  ⬝  SANTA ROSA BEACH

March 22, 2019
Page 2

Ms. Batley is a tenured full-time instructor in Bishop State's English Department. She has not been discharged from employment or disciplined. Her EEOC charge concerns summer 2018 employment, but instructors are not guaranteed summer employment. Full-time instructors are eligible for summer employment based on several factors, including satisfactory student enrollment, the courses taught by the instructor during the immediately preceding academic year, and seniority. Ms. Batley (white) alleges she has equivalent seniority to another faculty member, Patty Crockett (black), who did receive summer employment in 2018, but College records clearly show that Ms. Crockett has seniority over Ms. Batley. Ms. Crockett's date of hire as a full-time instructor is August 12, 2005, while Ms. Batley's is August 17, 2005. With this seniority and pursuant to the College's summer employment policy, Ms. Crockett received preference in summer class assignments. Ms. Crockett requested to teach a full load (four classes) in summer 2018 and four classes "made," meaning there was sufficient enrollment to conduct (and not cancel) those classes. That left no classes available for Ms. Batley to teach. Had Ms. Crockett elected not to request a full load, then Ms. Batley would have had the opportunity to teach one or more classes in summer 2018, as she did in summer 2017.

This assignment of classes in summer 2018 had nothing to do with either individual's race and was not in retaliation for any prior complaint or EEOC charge filed by Ms. Batley. In fact, the Humanities Division Chair, Dr. Adrian Evans, who was responsible for the 2018 summer class assignments, had no knowledge that Ms. Batley filed an EEOC charge (charge number 425-2017-00181) against the College in 2016. Dr. Evans did not serve as Ms. Batley's Division Chair at that time. (Indeed, very few College personnel were aware of Ms. Batley's prior EEOC charge as the EEOC dismissed it shortly after its filing and without requiring a formal response from the College.) Dr. Evans's first notice of Ms. Batley's prior charge came through review of Ms. Batley's current charge and in preparation for this position statement. Without knowledge of the prior charge, there can be no retaliation. Dr. Evans did not retaliate against Ms. Batley; she simply followed the College's summer employment policy in the assignment of classes.

## Employer Background and EEO Policies

Bishop State is a two-year community college within the Alabama Community College System, located in Mobile, Alabama. Bishop State has a diverse student enrollment and offers a variety of educational and technical programs. Bishop State and the Alabama Community College System ("ACCS") are committed to complying with all aspects of equal employment laws. Bishop State and ACCS's policies prohibit any discrimination on the basis of a job applicant or employee's race, sex, age, and all other protected characteristics. These policies are published in the College's handbook and its Policies and Procedure Manual and in the ACCS Board of Trustees policies, all of which are readily available. (*See* Exhibit 1, Bishop State policies 601, 602, and 603; Exhibit 2, ACCS policies 601.01 and 601.02.)

Bishop State also has a policy and procedure in place to internally address any concerns or complaints of alleged discriminatory treatment. (*See* Exhibit 1, Bishop State policy 603, p. 3.) Ms. Batley did not avail herself of Bishop State's procedure for submitting a complaint before filing this EEOC charge.

March 22, 2019
Page 3

### Charging Party's Allegations

Though the precise date on which Ms. Batley first contacted the EEOC is unknown, the EEOC issued on November 28, 2018 a Notice of Charge to Bishop State identifying the issue as "Discharge" and occurring on or about June 5, 2018. "No action" was required of the College, and no further details were provided at the time.

Ms. Batley submitted a sworn Charge to the EEOC on January 30, 2019. (The College did not become aware of the details of the Charge until March 8, 2019.) In that sworn Charge, Ms. Batley alleges that she has worked for Bishop State as an English Instructor since August 2006. She contends she was informed that she would not be allowed to teach during the summer [2018] semester which, she alleges, was in retaliation for filing a previous EEOC complaint. She asserts that not being allowed to teach in the summer resulted in immediate monetary loss and will negatively impact her retirement income.

Ms. Batley, who is white, states she was told by the HR Director and her direct supervisor, both of whom are black, that summer classes were assigned based on seniority. Ms. Batley contends that Ms. Crockett, a black English Instructor, was allowed to teach a full time summer load (four classes) while Ms. Batley was not allowed to teach any. Ms. Batley contends that she and Ms. Crockett were hired the same day in 2006 and should have equal seniority and equal opportunities for employment. Ms. Batley alleges she is the victim of race discrimination and retaliation.

Ms. Batley's allegation regarding her equivalent seniority status to Ms. Crockett is incorrect. She has not been discriminated against on the basis of race or retaliated against in connection with summer employment opportunities.

### Employment Background

Ms. Batley (white) was hired at Bishop State as a full-time English Instructor effective August 17, 2005. College records, including her letter of appointment and Human Resources electronic records, confirm this date. See Exhibit 3, Batley Letter of Appointment; Exhibit 4, Batley Personnel Data screenshots.

Ms. Crockett (black) was hired at Bishop State as a full-time English Instructor effective August 12, 2005. College records, including her letter of appointment and Human Resources electronic records, confirm this date. See Exhibit 5, Crockett Letter of Appointment; Exhibit 5, Crockett Personnel Data screenshots. Ms. Crockett's initial date of hire at Bishop State was August 21, 2003. She worked in a part-time capacity during the 2003-2004 and 2004-2005 academic years. See Exhibit 6. Her full-time status began, as stated above, on August 12, 2005. Notwithstanding her period of part-time employment, Ms. Crockett has greater seniority than Ms. Batley by five (5) days.

Both Ms. Batley and Ms. Crockett, like other full-time instructors, are nine-month employees, meaning their annual salary is based on 9-months of work, which is the regular academic year (Fall and Spring semesters). Full-time instructors are not "discharged" during the

March 22, 2019
Page 4

summer; they simply do not work in the summer unless they receive a summer employment contract. Some instructors want to teach in the summer; others do not.

**Summer Employment for Instructors**

The College typically conducts a summer academic term. Per ACCS and Bishop State policy, the "summer term is a separate entity, distinct from the fall and spring semesters." *See* Exhibit 7, Bishop State Summer Employment policy; Exhibit 8, ACCS Summer Employment policy 603.02. The College has guidelines to insure an equitable procedure for selecting personnel for summer term employment. "Full-time instructors . . . employed on nine-month contracts are not automatically entitled to summer employment. However, in the event that summer employment is available, current full-time schedule D employees must be given the first option for such employment over part-time or temporary employees."[2] Exhibit 7.

Enrollment, funding, employee qualifications, an employee's status, and areas taught by the employee in the most recent academic year are factors that must be considered in considering which employees shall be offered summer employment. *Id.* First priority for teaching goes to academic Directors/Division chairs because of the administrative duties expected of them in addition to their teaching. *Id.* The number of classes offered is based on institutional/student needs. *Id.* "Summer employment contracts for the College are based on the principal of seniority." *Id.* As further confirmed by ACCS policy 603.02, instructors may be given priority for summer teaching only in courses taught by the employee in the most recent fall and/or spring semesters. *See* Exhibit 8.

Both Ms. Crockett and Ms. Batley taught only Basic English I and II courses (ENG092 and ENG093) during the 2017-2018 academic year. *See* Exhibit 9, Crockett 2017-2018 class listing; Exhibit 10, Batley 2017-2018 class listing. Therefore, according to College and ACCS policy, they would have priority for summer 2018 teaching only in those Basic English courses. *See* Exhibits 7 and 8.

In mid-April 2018, Dr. Adrian Evans (black), the Humanities Division Chair, requested that division instructors notify her of their preference for summer employment – i.e., whether they wished to work that summer or not and if so whether they would like a full-time load (four classes) or part-time load (one, two or three courses).[3] Dr. Evans reminded the instructors that summer employment is not guaranteed and because there are factors involved (mainly seniority), they were not to report to work in the summer until requested to do so.

Ms. Batley had told Dr. Evans earlier in the year that she did not want to teach in the summer, but on April 2, 2018, Ms. Batley emailed Dr. Evans saying that she changed her mind and was willing to teach a class or two in late afternoon/evening if Dr. Evans could use her. *See* Exhibit 11, Batley email to Evans 4/2/18. Ms. Batley stated she understood completely if Dr.

---

[2] Schedule D refers to the salary schedule for full-time instructors. Ms. Batley and Ms. Crockett are both paid on salary schedule D.

[3] The Humanities Division contains six departments, including the English department of which Ms. Batley and Ms. Crockett are members.

March 22, 2019
Page 5

Evans could not use her and would be fine with her decision either way.[4] *Id.* Ms. Crockett, on the other hand, notified Dr. Evans that she wanted to teach a full load (four classes) during the summer term.

The 2018 summer class schedule was prepared with four Basic English classes on the schedule. Enrollment was sufficient such that each class was confirmed though not near maximum capacity. Ms. Crockett, having requested a full load and having seniority, was given preference to teach the full four class load, which she accepted. Because of that, there were no other Basic English classes for Ms. Batley to teach during the summer term. Exhibit 12, Summer 2018 class listing. (All other English courses offered during the summer were taught by instructors who had taught those courses during the preceding academic year as per policy.)

By way of history and contrast, in summer 2017, four Basic English classes were on the schedule, including one evening class. Ms. Crockett did not wish to teach a full load as she did not want to teach the evening class. Ms. Crockett taught the three day-time Basic English classes, and Ms. Batley was given the opportunity and did teach the one evening Basic English class in summer 2017. *See* Exhibit 13, Summer 2017 class listing. It seems this is the arrangement Ms. Batley would have preferred to have occurred in 2018 as well, but Ms. Crockett elected that summer to teach the evening class to make a full load, as was her prerogative given her seniority.

The 2018 summer term began on May 25, 2018. *See* Exhibit 14, Summer Term announcement. Dr. Evans emailed all Division instructors, including Ms. Batley, on May 29 with room assignments for the summer classes. *See* Exhibit 15, Evans email to Humanities Division instructors 5/29/18. Dr. Evans had notified those instructors who were assigned summer classes by telephone on May 25, May 28, or May 29 of their summer employment. On May 29, Batley acknowledged receiving Dr. Evans's email with classroom assignments and asked when she would know whether she had been given any classes for the summer. *See* Exhibit 16, Batley/Evans emails 05/29/18 – 05/30/18. Dr. Evans responded on May 30 notifying Ms. Batley that all classes that "made" (i.e., had sufficient enrollment to proceed) had been assigned. *Id.* Ms. Batley acknowledged then seeing the instructor assignments in the College's electronic system and asked why she was not assigned to teach at least one class. *Id.* Dr. Evans responded that "the senior member of the department [Ms. Crockett] requested a full load and only four classes made. There was not a need to add additional courses as those four only barely made." *Id.* Ms. Batley challenged Ms. Crockett's "senior" status, alleging as she does in her EEOC charge, that they were hired on the same day. *Id.* Ms. Batley further expressed that she'd "always tried to be fair" by not asking for a full load "so all in the department would be able to have something" as otherwise it would be greedy. *Id.* She expressed displeasure with the policy as making no sense and being unfair. *Id.* Fair or unfair, Ms. Batley knew by May 30, 2018 that she would not be under summer contract at Bishop State.

---

[4] It is believed Ms. Batley held other employment in the summers, which limited her interest and availability to teach day-time classes. She expressed interest, both in 2017 and 2018, to teach only evening classes due to her day-time conflict.

March 22, 2019
Page 6

## Analysis

Ms. Batley's EEOC charge is untimely. She identified June 6, 2018 in her charge as the date of the discharge occurrence, but the evidence is clear that she had notice on May 30, 2018 that she did not receive a summer employment contract. In Alabama, a charging party has 180 days to file a timely EEOC charge. The Notice of Charge (stating no action was required) issued to Bishop State is dated November 28, 2018, which falls after the 180-day deadline. As a result, and assuming that Ms. Batley did not file a charge of discrimination on or before November 26, then the EEOC lacks jurisdiction over this charge and it should be dismissed. Notably, Ms. Batley's sworn charge is dated January 30, 2019, which falls far beyond the 180-day window.

But even if her charge was timely filed, the EEOC should dismiss Ms. Batley's charge of discrimination and retaliation because it is without merit. The College's summer employment policy, both on its face and in practice, does not discriminate on account of race. There are legitimate, non-discriminatory reasons for Ms. Batley's not receiving a 2018 summer employment contract; her race had nothing to do with it. While she believes she and Ms. Crockett were hired on the same day, College records confirm they were not, with Ms. Crockett's effective date of hire (as a full-time instructor) falling five days prior to Ms. Batley's which gives Ms. Crockett seniority. When Ms. Batley argued in her May 30 email to Dr. Evans that she and Ms. Crockett were hired on the same day, Dr. Evans confirmed their dates of hire with the HR Director to double-check her understanding of their levels of seniority which are as reflected in the records provided herewith.

Based on Ms. Batley's email to Dr. Evans (Exhibit 16), it appears the heart of her concern is that Ms. Crockett's request to teach a full load in summer 2018 was selfish and greedy since there were then no classes for Ms. Batley to teach. But Dr. Evans followed College policy given Ms. Crockett's request to teach a full load and, as a result of her seniority, Ms. Crockett received those summer class assignments and the resulting summer pay. That is not discriminatory regardless of whether Ms. Batley thinks it is unfair.

Finally, as stated above, Ms. Batley's assertion that she did not receive a 2018 summer contract in retaliation for filing a prior EEOC charge is also without merit. Dr. Evans was not Ms. Batley's Division Chair when Ms. Batley filed her charge in 2016 and Dr. Evans was not aware that Ms. Batley had filed a prior EEOC charge until receipt of the current charge and in preparation of this position statement. Having no knowledge of Ms. Batley's prior complaint, Dr. Evans could not and did not retaliate against her for making such a complaint. And the prior charge is years old in any event and a causal connection cannot be inferred, particularly when Dr. Evans assigned a summer class to Ms. Batley in the intervening summer (2017).

In sum, summer employment is never guaranteed and is dependent on several factors including enrollment, classes taught in the most recent academic year, and seniority. Ms. Batley has not been discharged or disciplined in any way by the College. She did not receive summer 2018 employment for the simple reason that a senior member of her department requested a full load and only those four classes made; there was no need for any other Basic English classes during the summer term, which are the only classes Ms. Batley taught during the prior academic year and for which she would otherwise receive preference. Race and retaliation had nothing to do with it.

March 22, 2019
Page 7

## RESPONSE TO REQUEST FOR INFORMATION

1.   Give the correct name and address of the facility named in the charge.

**RESPONSE:**

**Bishop State Community College**
**351 North Broad Street**
**Mobile, Alabama 36603**

2.   Submit a written position statement on each of the allegations of the charge, accompanied by documentary evidence and/or written statements, where appropriate. Also include any additional information and explanation you deem relevant to the charge.

**RESPONSE: A written position statement is included above, with documentary evidence included.**

3.   Submit copies of all written rules, policies and procedures relating to the issue(s) raised in the charge. If such does not exist in written form, explain the rules, policies and procedures.

**RESPONSE: Applicable policies, including the College's Summer Employment policy, are attached as Exhibits 1-2, 7-8.**

Issue: DISCHARGE

1.   If the charging party was discharged, submit the following:

a.   date of discharge,

b.   reason for discharge,

c.   statement of whether the charging party had any right of appeal, and whether the charging party made use of any appeal rights

d.   person recommending the discharge, including name, race, position held,

e.   person making final decision to discharge the charging party, including name, race, position held. Attach copy of any evaluation or investigation report relating to the discharge, and copies of all pertinent documents in the charging party's personnel file relating to the subject discharge.

**RESPONSE: Ms. Batley has not been discharged from Bishop State. She is a current, tenured instructor in the English department.**

2.   Explain your discharge procedures in effect at the time of the alleged violation. If the procedures are in writing, submit a copy.

March 22, 2019
Page 8

**RESPONSE:** Because Ms. Batley has not been discharged from Bishop State, this request is inapplicable. Nevertheless, because Ms. Batley is a tenured employee, any discharge would be subject to the procedures detailed in the Students First Act, Alabama Code §§ 16-24C-1, et seq.

3.      Submit copies of all written rules relating to employee duties and conduct. Explain how employees learn the contents and rules.

**RESPONSE:** Ms. Batley has not been discharged or accused of any improper conduct, so this request is **not** applicable. The College's Summer Employment policy, which is the policy pertinent to Ms. Batley's charge, is provided as Exhibit 7.

4.      List all employees in the Charging Party's department who committed an infraction of company rules and the action, if any that was taken by the Respondent. Supply backup documentation for the list. Include name, race, position title, hire date and separation date (if applicable).

**RESPONSE:** Ms. Batley has not been discharged or accused of committing any infraction of College rules, and no adverse action has been taken against her.

5.      List all the employees discharged within the relevant period. For each employee, include employees name, race, position title, reason for and date of discharge, and a copy of the separation notice.

**RESPONSE:** Ms. Batley has not been discharged and whether any other College employees have been discharged during 2018 is not relevant or pertinent to the pending charge. Even so, no full-time English Department instructors were discharged during the "relevant period."

6.      Provide the EEOC with a listing of all employees who worked at the Respondent's facility, with the Charging Party at any point, during the relevant time period. For each non-managerial employee provide their home address and home phone number, cell phone number and email address.

**RESPONSE:** The College is providing a list of all full-time English Department instructors. *See* Exhibit 17. Because the Division Chair, Dr. Adrian Evans, is considered a managerial employee, her contact details are not included. Should the EEOC wish to speak with Dr. Evans concerning this charge, the EEOC is requested to contact undersigned counsel. For informational purposes, each instructor's date of hire at the College as a full-time instructor is also included.

March 22, 2019
Page 9

Issue: HIRING

1.      Submit a copy of your hiring policies. If actual hiring practice is different from the written policy, describe actual practice.

**RESPONSE: Ms. Batley is a current, tenured employee of the College. The College's hiring policies are, therefore, not relevant or pertinent to this charge. The College has attached its Summer Employment policy, *see* Exhibit 7, which is the policy pertinent to Ms. Batley's charge, as well as the ACCS Summer Employment policy, *see* Exhibit 8.**

2.      Describe in detail the method(s) used by your organization to receive, screen, and process applications for employment for the position in question. Your description should include, but not be limited to, the following information:

      a.      the manner in which persons are recruited for the position in question,

      b.      the manner in which a person is determined to be an 'applicant' for the position,

      c.      whether applications are solicited or accepted whether or not vacancies exist for the position,

      d.      the time period for which applications are considered active and the time period for which applications are retained,

      e.      the forms of written documentation used which reflect the solicitation, receipt and processing of an application,

      f.      how applications for the position are reviewed for the purpose of selecting an applicant. Include the name, position, of persons responsible, and

      g.      whether applicants are interviewed during the application process and if so, by whom (include name, position, of individual(s)).

**RESPONSE: Current full-time instructors do not "apply" for summer employment, but rather notify their Division Chair if they are interested in teaching during the summer term and indicate whether they wish to teach a full or partial load. The Division Chair assesses that information in preparing class assignments based on student enrollment and which classes "make" (*i.e.*, will be held), prior academic year teaching assignments, and seniority, all consistent with the College's Summer Employment policy.**

3.      State whether the charging party applied for the position in question during the relevant period. If yes, for each time the charging party did apply, include the following:

      a.      the date of and the nature of application, whether written or oral,

March 22, 2019
Page 10

     b.     a copy of the application and/or resume filed by the charging party and/or any other notation made during the processing of the charging party's application,

     c.     the exact job title and job grade or wage level sought by the charging party, and

     d.     whether the charging party sought full-time, part-time, temporary, seasonal or other type of employment.

**RESPONSE:** Ms. Batley did not "apply" for summer 2018 employment, but did express her interest in teaching part-time, specifically a class or two in the late afternoon/evening, if such were classes available. Her email to Dr. Evans dated April 2, 2018 is attached as Exhibit 11.

4.     State whether the charging party was considered for the position. If your answer is no, state each reason why the charging party was not considered for the position.

**RESPONSE:** Because Ms. Crockett has greater seniority than Ms. Batley, Ms. Crockett was given priority to teach the Basic English courses during Summer 2018. (As noted above, Ms. Crockett and Ms. Batley both only taught Basic English courses during the preceding academic year so were given priority for those classes, whereas instructors who taught other classes during the academic year were given priority to teach those courses during the summer term.) And because Ms. Crockett requested a full teaching load (four classes) and accepted that opportunity, there were no classes available for Ms. Batley to teach. As such, Ms. Batley was not needed for the summer term. Of course, Ms. Batley remained employed by the College and resumed teaching full time in the Fall 2018 term.

5.     State whether the position in question was filled during the relevant period. If your answer is yes, provide the following for each person selected for the position:

     a.     name, race

     b.     the date of and the nature of application, whether written or oral,

     c.     a copy of the application and/or resume filed by the successful candidate and/or any other notation made during the processing of the application,

     d.     the date on which the person applied for or otherwise indicated interest in the position,

     e.     the job title, and job grade or wage level for which the person was hired, and

     f.     the date the person was hired as full-time, part-time, temporary, seasonal or other.

March 22, 2019
Page 11

**RESPONSE:** Ms. Crockett (black) notified Dr. Evans verbally in or about April 2018 that she wished to teach during the summer term and wanted a full load (four classes). She may have also notified Dr. Evans in writing, but Dr. Evans has been unable to locate it. Four Basic English classes were taught during the summer 2018 term, and Ms. Crockett, having seniority, was assigned those classes since she had requested a full load. Like other instructors teaching full loads during the summer term, Ms. Crockett was paid for her services based on her placement on the ACCS salary schedule. Ms. Crockett's summer 2018 pay was $17,394. *See* Exhibit 18.

6.    State each and every reason why the charging party was not selected for the position in question. Provide any written documents which reflect the bases of the decision not to select the charging party. For each person involved in the decision not to select the charging party, list their name, position.

**RESPONSE:** The position statement and responses above answer this request in detail and supporting documents are provided herewith. Dr. Adrian Evans, Humanities Division Chair, handled the summer 2018 assignments at issue.

7.    State each and every reason why you contend the person(s) selected for the position was/were selected instead of the charging party. Provide any written documents which reflect the bases of your decision to select those persons who were hired into the position. List all persons hired during the relevant period, including name, race, hire date, position applied for, position hired to.

**RESPONSE:** As noted above, Ms. Crockett has greater seniority at the College than Ms. Batley, which is reflected in College records. Because Ms. Crockett requested a full teaching load for summer 2018, there were no additional classes for Ms. Batley to teach. Supporting detail is provided herewith.

Basis: RETALIATION

1.    List by name, and position all officials of your organization who have been informed of, or knew of all the allegations of discrimination made by the Charging Party, if any. For each person listed, state the date such notification was received, the nature of the notification, and the person's response to it. Submit all documents which state, describe, reference, or relate to the notification of the Charging Party's complaint.

**RESPONSE:** Ms. Batley filed an EEOC charge in November 2016, which the EEOC dismissed in December 2016 without requiring the College to formally respond. Those aware of that charge include: Dr. Reginald Sykes, President; Ann Clanton, Vice President of Operations; and Marquita Lyons, former Human Resources Director. The College received only those notices that the EEOC provided to it. The College's legal counsel subsequently acquired the EEOC's file pursuant to a FOIA request following Ms. Batley's filing (*pro se*) a federal lawsuit which was shortly thereafter dismissed.

March 22, 2019
Page 12

2.      Describe any personnel action(s) involving Charging Party taken after the earliest date any person in your organization had knowledge of Charging Party's allegation(s) of discrimination. Submit all documents which state, describe, reference, or relate to these personnel actions.

**RESPONSE:** No adverse personnel actions have been taken against Ms. Batley. In fact, she taught one class in summer 2017, which followed her first EEOC charge. Ms. Crockett did not request to teach a full load in summer 2017 so classes were available for Ms. Batley to teach, and she did elect to teach one evening Basic English class. Dr. Evans made both the 2017 and 2018 summer assignments.

## Conclusion

For all the reasons stated above, Bishop Sate requests that the EEOC issue a no cause finding and dismiss this charge of discrimination. If any further information is needed, please contact undersigned counsel.

Sincerely,

Windy Cockrell Bitzer
For the Firm

WCB/av
Attachments
3624501_1.docx

# EXHIBIT 11

**Tommi Batley's Response to Respondent's Response for Case No: 425-2019-00203**

As the president of Bishop State, Dr. Reginald Sykes, said himself in a full faculty and staff meeting at the college in December 2018, "There are no secrets at Bishop State." And he is absolutely correct. Respondent's assertion that no one other than the President, Vice President, and Director of Human Resources had any knowledge of any prior complaints that I had filed with the EEOC is absurd.

First of all, when my contract was not renewed in May 2009, it was only after filing a complaint with the EEOC that I was offered a new contract and tenure beginning in the following Fall 2019 semester. After my contract was renewed, I dismissed the claim. However, the grounds for my complaint, and the only reason my contract was ultimately renewed, was because my coworker, Patty Crockett (black female), who had equal seniority as I did, was retained and her contract was renewed, but mine was not even though I had more qualifications and teaching experience than Ms. Crockett. (I can provide any of this documentation upon request as I have not had the opportunity to scan and upload exhibits to submit at this time.) Needless to say, the news of my dismissal in May 2009 was far from a secret at the college; I was treated like a leper for the remaining weeks of the Spring 2009 semester as if whatever reason I was dismissed for was highly contagious. I was extremely humiliated by this action and the subsequent treatment of my coworkers. When I returned to work that following Fall 2009 semester, the gossip and rumors were rampant. Since everyone was well aware that Ms. Crockett and I began teaching full time for the college at the same time, yet her contract was renewed and mine was not, some rumored that I had filed a discrimination lawsuit against the college and that's why I was given my job back. (This was relayed to me by certain coworkers who can attest to this rumor through affidavits upon request.) For those who resented me being reinstated, it seemingly became their mission to make my life a living hell for as long as I stayed employed there. I feel confident that every employee, especially in the division of Humanities, who has worked there as long as I have (or longer), knows about my dismissal and reinstatement and the reason my contract was renewed, so to say Dr. Evans was unaware that I had filed a complaint of some sort based on grounds of discrimination is without merit. Furthermore, she was given all of my personnel files and information from the previous chair of the division with whom I have had to file complaints on as well for years of this ongoing discriminatory treatment. Dr. Evans even gave me the same end of the year evaluation as the former division chair when Evans had never even observed me in the classroom. (I can provide both of these evaluations upon request.) To say that other employees and coworkers at the college were unaware of me filing EEOC charges or lawsuits against the college is simply not true. To say that I was not subjected to unjust disparate treatment or retaliated against for filing those charges and/or making those complaints would also be untrue.

Coworkers in our division knew that Ms. Crockett and I began working for the college as full time instructors at the same time. Some of those people were even on the interviewing committee that interviewed both of us for the job on the same day. (One former employee will attest to interviewing both of us on the same day. I can provide an affidavit upon request for this as well.)

In short, I would not have my job today if Ms. Crockett had seniority over me. I would have never been reinstated in the Fall of 2009 if Ms. Crockett had seniority over me. Furthermore, the question of seniority between the two of us has never been in question since then until this past summer when Dr. Evans explained to me that Ms. Crockett was given all of the classes for the summer semester because she is the senior instructor in the division. I have filed other complaints in the past about Ms. Crockett being given summer classes when I was not, or being given more than I was given, and not once was I told that Ms. Crockett had seniority over me and that was why she was given those classes. Until this past summer 2018.

I have met with two directors of Human Resources (Lyons as well as the current director) at the college and the Vice-President of Operations, Ms. Ann Clanton, who is second to the president to discuss the question of seniority between Ms. Crockett and me. None of these people have told me that Ms. Crockett has seniority over me. They have mentioned the fact that the personnel database indicates that Ms. Crockett was hired 3 days before I was, but that database indicates the date that Human Resources entered the information. It has nothing to do with the actual contract dates for employment. Ms. Crockett and I began teaching on the exact same day. Furthermore, as I discussed with Ms. Clanton, it is also common knowledge that those entries in that database (AS/400) can be changed/altered/modified, but the changes can also be tracked by the date the changes were made as well as initials of the person who made them. For example, one of the exhibits provided by the respondent indicated my date of hire as 8/17/2006 but had me listed as having a Ph.D. when I did not have my Ph.D. at the time I applied for the position at the college. It was 2009 before I completed my doctorate. I was hired with a Master's Degree and brought in with a salary and rank for a Master's Degree. (All of this can also be verified and documents can be provided upon request.) Meaning, that information had to have been changed at some point for it to have me listed with my Ph.D., just as the dates of hire could have been changed as well.

Meaning, the validity of some of the documents provided as exhibits by the Respondent should be investigated further. It is a known fact that there are discrepancies in personnel records for the college. The disclosures provided by the college on its website are only one example. The current director of Human Resources gave me that example when she also told me that she could not tell me who had seniority because she did not know if it was based on the contract period for employment or the date of hire as entered in the system by Human Resources. This

has been the same response I was given by the former Human Resources director (Lyons) as well as Ms. Clanton. My file, in particular, is missing at least half of what should be in there. One particular document in question is a contract in my personnel file that is not signed or dated by me which the respondent provided as an exhibit. I do not think colleges are in the business of hiring employees without having them sign a contract.

Finally, I responded in an email earlier this week that the respondent's claim that my charge was untimely is a moot point. The department chairs do not issue teaching contracts. This is a known fact. Division chairs create and submit schedules, but they do not have authority to assign or deny contracts. Human Resources issues contracts, and I had an appointment to meet with the director of Human Resources on May 31 after my division chair told me that the senior person in the division had been given all of the summer classes. Since I knew, and explained to her in the email (also included as an exhibit by the respondent) that Ms. Crockett and I had equal seniority, I contacted Human Resources to get clarification and to find out if I would be given a summer teaching contract. When I arrived for my appointment, I was told by the secretary for Human Resources that she was out for the day and I would need to reschedule for the following week. (President Sykes was present when this conversation took place between the secretary and me.) Needless to say, it was June 2019 before I was able to meet with the director of Human Resources, and that is when she explained to me why Ms. Crockett was alleged to have seniority and would therefore have priority in the summer semester. However, she also told me that she did not have a policy that explained the guidelines for determining seniority for instructors with specific contract periods with specific beginning and ending dates. She could only speak for the policy regarding staff or other employees without a specified contract period.

As stated in a prior email earlier this week, I am attempting to respond to the respondent's statements in a very limited timeframe since I was not aware of the online portal that we were supposed to be using, and I had not received the email that anything was being requested of me. It was my fault for not checking my email, but I was not expecting anything and have received important correspondence from the EEOC office via USPS in the past. This is far from a comprehensive or thorough response, but it is the best that I can do in the time that I have been given to provide it. I will be happy to supplement or provide any additional documentation to support my claims upon your request.


Respectfully submitted,

Tommi R. Batley

# EXHIBIT 12

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: **Tommi R. Batley**
**1119 Selma Street**
**Mobile, AL 36604**

From: **Mobile Local Office**
**63 S Royal Street**
**Suite 504**
**Mobile, AL 36602**

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **425-2019-00203** | **LANEETRA D. HARRIS,** Investigator | **(251) 690-2583** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[X] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Erika LaCour*                     9.9.19

Enclosures(s)                     **Erika LaCour,**
**Local Office Director**                     *(Date Mailed)*

cc:   **BISHOP STATE COMMUNITY COLLEGE**

**Windy C. Bitzer, Attorney**
**Hand Arendall Harrison Sale LLC**
**P.O. Box 123**
**Mobile, AL 36601**

U.S. Equal Employment Opportunity Commission
Mobile Local Office
63 South Royal Street, Suite 504
Mobile, AL 36602

OFFICIAL BUSINESS
Penalty for Private Use $300



MOBILE
AL 366
10 SEP '19
PM 2 L

U.S. POSTAGE ≫ PITNEY BOWES

ZIP 35205  $ 000.50⁰
02 4W
0000361438 SEP 09 2019



36604-292119

# EXHIBIT 13

EEOC Public Portal has re-opened

U.S. Equal Employment Opportunity Commission <noreply@eeoc.gov>
Sun 2/10/2019 2:01 PM
To: trbatley@hotmail.com <trbatley@hotmail.com>

⋃ 1 attachments (186 KB)
eeoc_color_seal2245201584559514365eeoc_color_seal;

 **U.S. Equal Employment Opportunity Commission**

As you probably know, the federal government's shutdown closed our Public Portal. We are sorry for any inconvenience this may have caused. We are happy to report that the Public Portal has re-opened and is available for your use at https://publicportal.eeoc.gov. If we asked you to submit a document or a response and the submission deadline was between December 22, 2018, and January 29, 2019, we are extending your submission deadline to February 12, 2019. Local EEOC staff will contact you to reschedule any other matters scheduled or due during the shutdown, including intake appointments and mediations. Thank you for your patience and understanding.

*Notice of Confidentiality: The information contained in this transmission may contain privileged and confidential information, including information protected by federal and state privacy laws. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution, or duplication of this communication is strictly prohibited and may be unlawful. If you are not the intended recipient, please contact us at* digital-support@eeoc.gov *and destroy all copies of the original message and attachments.*

# EXHIBIT 14

ERIKA LACOUR <ERIKA.LACOUR@EEOC.GOV>
Mon 10/28/2019 9:45 AM

Thank you for your email. Please note that you have ninety (90) days from the date you received
the Dismissal Notice to file a lawsuit in Court. I will forward your request for reconsideration to
the District Director for response. Please note that unless the Director rescinds the Dismissal
Notice that your time period will continue to run. If you fail to file a lawsuit before the expiration
of the ninety (90) day period, your right to sue will be lost and cannot be restored by the EEOC.

Best Regards,

Erika LaCour

MLO Director

**From:** Revé Batley <trbatley@hotmail.com>
**Sent:** Friday, October 25, 2019 1:07 PM
**To:** ERIKA LACOUR <ERIKA.LACOUR@EEOC.GOV>
**Cc:** LANEETRA HARRIS <LANEETRA.HARRIS@EEOC.GOV>
**Subject:** Re: EEOC Dismissal Notice Case No: 425-2019-00203

Good afternoon Ms. Lacour,

I am writing you regarding the Dismissal notice I received from you dated September 9, 2019.
More specifically, I would like to find out if and/or how I can request to appeal this decision
and/or have my case reviewed by someone outside of the local EEOC office. I do not believe that
the Mobile office is providing due diligence in regard to my complaints.

To add further insult to injury, in your letter of dismissal dated September 9, 2019, you indicated
that your reason for dismissing my case was because it was not timely filed. It was my
impression the question of timeliness of filing had been settled in this email correspondence (and
my subsequent response to respondent) when I provided you with clarification and/or an
explanation as to why the respondent's statement was incorrect. As you indicated in your email
to me dated March 25, 2018, the respondent stated that I had been informed on May 30, 2018

that I would not have a summer contract, and if this were the case, my complaint would not have been timely filed. Which I understood. However, as I explained to you in my reply on April 14, 2019, that was NOT the case as respondent inaccurately indicated. I was NOT informed on May 30, 2018 that I would not receive a summer teaching contract. **It was not until the following week that I was informed that I would not receive a summer teaching contract.**

I scheduled an appointment with the Director of Human Resources that following day when I expected to find out if I would be assigned a summer contract. However, when I arrived for my appointment, she was not there and had not notified me. Instead, her secretary indicated to me that I would need to reschedule for the following week because Ms. Lyons had called in sick. Therefore, it was not until the following week when I was finally able to meet with the Director (Ms. Lyons) that I was officially made aware that I would not receive a summer contract.

As I have already explained, contracts are issued and assigned by Human Resources--not division chairs. In my response to you on April 14, 2019 I thought I made this very clear. Meaning, if I had failed to do so, why did the investigation continue? Why was I asked to relive this nightmare for the next (almost) 6 months if you had already decided and determined that my complaint was not timely filed? I do not understand why time and resources would have been wasted on an investigation when you had already made the determination that my complaint was not timely filed. Why was my complaint not dismissed then?

It is an extreme understatement when I say that I am very disappointed in how my complaints have been handled by your office as this is not the first one that you have dismissed for one reason or another. I was under the impression that it was the responsibility of your office to ensure that all employees, regardless of race, are afforded equal rights and equal treatment in the workplace. I thought it was your duty to make sure racial discrimination in the workplace is not tolerated. That is not the impression that I have anymore.

Please let me know what kind of recourse, if any, I have in regard to this matter as it relates to your office's investigation of my complaint and decision to dismiss my complaint. I would appreciate your assistance with this matter.

Sincerely,

Tommi R. Batley

Case No: 425-2019-00203

**From:** ERIKA LACOUR <ERIKA.LACOUR@EEOC.GOV>
**Sent:** Monday, April 15, 2019 6:59 AM
**To:** Revé Batley <trbatley@hotmail.com>
**Subject:** RE: EEOC

Greetings,

You must log into the portal to review the employer's full response. Please note that you will have a final deadline date of April 17, 2019, to submit any additional information you would like the EEOC to consider.

Best Regards,

Erika LaCour

MLO Director

**From:** Revé Batley <trbatley@hotmail.com>
**Sent:** Sunday, April 14, 2019 9:58 PM
**To:** ERIKA LACOUR <ERIKA.LACOUR@EEOC.GOV>
**Subject:** Re: EEOC

Good evening Ms. Lacour,

Thank you for your email regarding this matter; however, I am just now seeing/reading it along with a couple of other emails that came from EEOC regarding using a public portal to send and receive documents. However, I have not checked into any of that yet as this tardy correspondence is my priority at the moment.

As you will note, I have not sent a reply regarding the respondent's report regarding the charge, and I am contacting you to find out if it is too late to submit a response since your email states that you needed something by April 12 which has passed. I can come to your office and submit something in writing or however you would prefer.

I apologize for not responding to this matter sooner. I was not even aware that ANYTHING had been done in regard to my charge, nor was I aware that you needed anything further from me. I have always received some kind of notice in the USPS mail from your office for important correspondence in the past. This is not an email address that I check very often unless I am expecting something...which I was not.

That aside, I will say this in regard to the content of your message pertaining to the respondent's claim regarding the timeliness of filing my complaint. First of all, I am not surprised that they would attempt to look for some kind of loophole that would excuse them from having to respond to the actual allegations. That is intentional and sadly pathetic, but in this particular case, it is also a moot point.

While it is true that I had contacted my division chair regarding the fact that I did not see ANY names assigned to the summer schedule as of May 30, the respondent is well aware that my division chair does NOT handle nor assign teaching contracts. The Director of Human Resources assigns contracts. A division chair does not have that kind of authority, and the respondent knows this. Summer teaching contracts are handled by Human Resources—not by division chairs.

After NOT receiving clarification from my division chair about the schedule, I immediately contacted Human Resources that same day. I was given an appointment time for the next day to discuss the summer schedule and the issue of seniority in my division. When I showed up for my appointment, the Director of Human Resources was not there, nor was there anyone else with the knowledge or authority to explain or assign contracts. As a result, I had to reschedule my appointment with the HR Director for another day.

Meaning, I was NOT informed that I would NOT receive a summer contract or teaching assignment on May 30 as respondent claims. I was scheduled to meet with the Director of Human Resources on May 31 to find out whether or not I would be given a summer teaching assignment, but she was not there. Respondent's argument regarding timeliness of filing is a moot point.

Furthermore, if my accusations are false and have no merit, respondent should WANT to respond to these allegations if no violations have been committed. This type of disparate treatment has been an ongoing problem for years, and they need to be held accountable for their actions—If they are innocent of the charges made against them, they should have no problem proving their innocence very easily and welcome the opportunity. Surely, they have a very good reason for making the decision to give one instructor a full time load and another instructor nothing, right? That's what I want to know. Not how good they are at trying to avoid telling the truth. That's well-understood, or else they would have been shut down years ago.

I don't know what else to tell you or to do at this point, Ms. Lacour, so I will wait to hear from you as to how you would like for me to proceed. Thank you for getting back with me and for looking into this matter. Knowing that much has at least given me some hope again in the real possibility of "justice for all." I will be checking my email frequently tomorrow, or you may reach me on my cell at 251-366-2358 anytime.

Sincerely,

Tommi Revé Batley

---

**From:** ERIKA LACOUR <ERIKA.LACOUR@EEOC.GOV>
**Sent:** Monday, March 25, 2019 9:27:06 AM
**To:** trbatley@hotmail.com
**Subject:** EEOC

Greetings,

I have released to you the employer's response to your allegations of discrimination. The Respondent reports you were informed on May 30, 2018 that you would not teach summer school classes. If this is the case, your Charge was not timely filed. Your form 5A was received on November 27, 2018; however, the last date to file for the summer course issue would have been Monday, November 26, 2018.

Please note that you are to submit a response to the employer's response not later than April 12, 2019.

Best Regards,

Erika LaCour

MLO Director

# EXHIBIT 15



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Birmingham District Office**

**NOV - 6 2019**

Ridge Park Place
1130 22ⁿᵈ Street South, Suite 2000
Birmingham, AL 35205
Intake Information Group: 800-669-4000
Intake Information Group TTY: 800-669-6820
Birmingham Direct Dial: (205) 212-2100
FAX (205) 212-2105
Website: www.eeoc.gov

Our Reference:
EEOC Charge No.: 425-2019-00203
Tommi R. Batley v. Bishop State
Community College

Tommi Batley
1119 Selma Street
Mobile, AL 36604

Dear Ms. Batley:

This letter is written in response to your correspondence received via email on October 25, 2019 by the U.S. Equal Employment Opportunity Commission (EEOC) Mobile Local for reconsideration of the Dismissal and Notice of Rights (Notice) issued on September 9, 2019 in the above-referenced matter.

I have entered into contact with the Mobile Local Office Director regarding this matter. I regret your dissatisfaction with the processing of the charge. The EEOC enforces several laws which prohibit employment discrimination and there are strict time frames in which a charge must be filed with the EEOC. Generally, the charge must be filed with the EEOC within 180 days of the alleged discriminatory act. In accordance with the aforementioned time frame, the issue you raised in the charge does not appear timely.

Please note that a decision was issued based solely on the evidence of record. The EEOC is a neutral civil rights law enforcement agency. Our responsibility is to process charges filed with us in a fair and objective manner to determine whether the laws we enforce have been violated. We understand that the parties to a charge often have firm views the available evidence supports their respective positions. However, our final actions must comport with our interpretations of the relevant evidence and the laws we enforce. In those situations where a charging party disagrees with our final action on a charge, they have a statutory right to pursue the matter in court. The final determination issued for your charge described your right to pursue the matter in court. If a lawsuit is not filed within the statutory 90-day period, the right to sue in the matter will expire. The EEOC cannot extend the deadline for you to file a lawsuit and we cannot restore the right to sue if the statutory 90-day period expires.

We hope this information is helpful but regret there is nothing further the EEOC can do to assist in this matter.

Sincerely,

Bradley A. Anderson
District Director

# EXHIBIT 16

From: Roxanne Hannon-Odom <rhannon@bishop.edu>
Date: Tuesday, May 26, 2015
Subject: course reduction
To: Reve' Batley <rbatley@bishop.edu>

Good Morning!

Due to low enrollment in one of the morning classes, the class was cancelled today. As chair, I have to teach 3 classes during the summer. I am relieving you of the 5:30pm class which I will take. Sorry for the inconvenience, and thanks for being available when needed.

Roxanne

From: Roxanne Hannon-Odom <rhannon@bishop.edu>
Date: Wednesday, May 27, 2015
Subject: Verification
To: Reve' Batley <rbatley@bishop.edu>
Can you verify those who have attended the 5:30 class before 4:30pm today? Verification is due at 5pm. Just list names of whoever has attended and I can use my judgement from there.

Thanks!
From: Roxanne Hannon-Odom <rhannon@bishop.edu>
Date: Thursday, May 28, 2015
Subject: summer schedule
To: Reve' Batley <rbatley@bishop.edu>

Good Morning,
I am sorry that you are upset that I had to assume the Eng 093 A50 class. However, as chair I have no choice but to work full time in the summer. Last summer, I gave you and Crockett both 2 classes and I taught 2 classes which I was reprimanded for because I was required to teach the full load. Per Dr. McCane, I had to immediately cancel the class and take the evening class and follow through with the other procedures for verification. I notified you when I was notified.

If I am here next summer, I will not make any course assignments until I know for sure that the classes will continue to run to keep feelings from being hurt. As you know, summer employment is based on seniority!

Have a good day!

**Bishop State**

Reve' Batley <rbatley@bishop.edu>

## ENG 101-A50A/099-A50

3 messages

**Adrian Evans** <aevans@bishop.edu>                                     Wed, Jun 5, 2019 at 11:36 AM
To: Tommi Batley <rbatley@bishop.edu>
Cc: Roderick McSwain <rmcswain@bishop.edu>, Ann Clanton <aclanton@bishop.edu>

Dr. Batley,

I hope you are well. I have just phoned and received no answer, so I decided to email. We have available the ENG 101-A50A and ENG 099-A50 for summer 2019 if you are available to teach. Please let me know if you are available for classes this evening; I can email the students prior to changing in the system, if you wish, to indicate a new meeting room. Thank you for your attention to this matter.

--ACE

--
Adrian C. Evans, PhD
Chair, Humanities and Fine Arts Division
Bishop State Community College
351 N. Broad Street
Mobile, AL 36603
Phone: (251) 405-7095

**Reve' Batley** <rbatley@bishop.edu>                                     Wed, Jun 5, 2019 at 2:50 PM
To: Adrian Evans <aevans@bishop.edu>
Cc: Roderick McSwain <rmcswain@bishop.edu>, Ann Clanton <aclanton@bishop.edu>

Dr. Evans,

Good afternoon and thank you for the offer. That is great news. I would appreciate anything that is available as I desperately need to try to max out the summers as much as possible to meet my retirement date in 2 years. I am just now driving back from my mom's in MS, so I have had very sketchy cell service. I am sorry I missed your call.

Please send me any specifics that I need, and yes, I would prefer to meet classes in the upstairs classroom in the library (LSR) next to my office if possible. If I need to meet the classes where they are scheduled now this evening, I can and will do that if it will help. Just let me know what you want me to do, when, and where, and I will be there.

Thank you again,
Batley
[Quoted text hidden]

**Adrian Evans** <aevans@bishop.edu>                                     Wed, Jun 5, 2019 at 2:53 PM
To: Tommi Batley <rbatley@bishop.edu>
Cc: Roderick McSwain <rmcswain@bishop.edu>, Ann Clanton <aclanton@bishop.edu>

Thank you, Dr. Batley. I will direct the classes to the LSR.

--ACE
[Quoted text hidden]

# EXHIBIT 17

**Bishop State**  Reve' Batley <rbatley@bishop.edu>

## Appointment with you
13 messages

**Reve' Batley** <rbatley@bishop.edu>  Wed, May 30, 2018 at 11:17 AM
To: Marquita Lyons <mlyons@bishop.edu>

Good morning Ms. Lyons,
Would you please let me know when you have a moment that I could come by and speak with you about some HR questions I have? It won't take long, but I would also like to review my file quickly if I may do so while I am there.
Thank you so very much!
Reve Batley

**Marquita Lyons** <mlyons@bishop.edu>  Wed, May 30, 2018 at 11:27 AM
To: Reve' Batley <rbatley@bishop.edu>

Sure. What is the topic of discussion?
[Quoted text hidden]

—

***Confidentiality Notice****: This transmission (including any attachments) may contain information that is privileged and confidential in nature belonging to the sender and is intended only for the use of the party or entity to which it is addressed. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, retention or the taking of action in reliance on the contents of this transmission is strictly prohibited. If you have received this transmission in error, please immediately notify the sender and delete and discard all information and attachments.*

## Marquita F. Lyons, MPA
*Director of Human Resources*

Bishop State Community College
351 North Broad Street
Mobile, AL 36603-5898

email: mlyons@bishop.edu
T 251.405.7052  F 251.438.4316
website: www.bishop.edu

**Reve' Batley** <rbatley@bishop.edu>  Wed, May 30, 2018 at 12:11 PM
To: Marquita Lyons <mlyons@bishop.edu>

Mostly seniority and summer employment policies. I don't think I am clear on either one, and I have been working here for more than a day or two! Hahaha You would think I would know this stuff by now! When would be a good day/time for you?
[Quoted text hidden]

**Marquita Lyons** <mlyons@bishop.edu>  Wed, May 30, 2018 at 12:15 PM
To: Reve' Batley <rbatley@bishop.edu>

Well we have recently updated the summer employment policy on the local level. Have you spoken with your Division Chair regarding seniority and summer employment?

[Quoted text hidden]
[Quoted text hidden]

---

**Reve' Batley** <rbatley@bishop.edu>    Wed, May 30, 2018 at 12:30 PM
To: Marquita Lyons <mlyons@bishop.edu>

Yes, I have, and I also have the most recent policy I believe (if it is the one Ms. Clanton sent out in an email this semester for our review.) That's why I think I need to speak with you to further discuss the matter because I don't think I am understanding it correctly. Do you have a good day and time that I could meet with you briefly?
[Quoted text hidden]

---

**Reve' Batley** <rbatley@bishop.edu>    Wed, May 30, 2018 at 12:38 PM
To: Marquita Lyons <mlyons@bishop.edu>

Do I need to have my chairperson make the request to you for me to meet with you? I thought I could make the request directly to you. If not, please let me know, and I will ask her to intercede and make the request. Thanks.
[Quoted text hidden]

---

**Reve' Batley** <rbatley@bishop.edu>    Wed, May 30, 2018 at 1:51 PM
To: Marquita Lyons <mlyons@bishop.edu>

I will ask my chairperson to contact you to make the appointment if that is the proper way I'm supposed to do it. I didn't know that we needed to go through our chair to schedule an appointment with you. I apologize if I did not follow proper procedure to request the appointment.
[Quoted text hidden]

---

**Marquita Lyons** <mlyons@bishop.edu>    Wed, May 30, 2018 at 2:23 PM
To: Reve' Batley <rbatley@bishop.edu>

Okay, no problem. I like to make sure we're going through the correct chain of command. If you weren't able to gain an understanding from your Division Chair, I don't mind going over the policy with you.

I can see you on Fri., 06/01/2018, at 10a.
[Quoted text hidden]

---

**Reve' Batley** <rbatley@bishop.edu>    Wed, May 30, 2018 at 4:02 PM
To: Marquita Lyons <mlyons@bishop.edu>

I understand and agree. It was my discussion with her about these matters that prompted me to contact you to hopefully try to gain some clarity or a better understanding. I thought I knew and understood the policy and/or procedure, but apparently, I do not.

I don't mind asking her to contact you about the appointment for me if that is the proper protocol or is necessary or how you would prefer for it to be done. Just let me know how you would like for me to proceed. In the meantime, I will plan to see you on Friday at 10am. I apologize for any confusion I may have caused in trying to schedule the appointment, and I do appreciate your time and assistance with my request.
[Quoted text hidden]

---

**Marquita Lyons** <mlyons@bishop.edu>    Thu, May 31, 2018 at 2:25 PM
To: Reve' Batley <rbatley@bishop.edu>

Reve',

I have you down for tomorrow, Fri., 6/1/18, at 10a.

Thanks,

Marquita
[Quoted text hidden]

---

**Reve' Batley** <rbatley@bishop.edu>                                Mon, Jun 4, 2018 at 11:40 AM
To: Marquita Lyons <mlyons@bishop.edu>

Good morning. I came to your office on Friday because I did not know you were out sick. I hope you ar feeling better. The young lady at the front desk said that she would have you contact me to reschedule for another time when you return, so if you will, please let me know the next available time you have to meet with me.

I already have a copy of the summer employment policy. My question is in regard to seniority and how that is defined and determined in regard to summer employment. Specifically, does seniority include parttime or adjunct employment or any other factors other than the date of hire for fulltime employment? I guess my question is do you know the answer to that, and/or do you have any kind of policy or procedure that explains how seniority is determined? If so, you may just send that, and it won't be necessary to reschedule a meeting.

Thanks so much!
[Quoted text hidden]

---

**Marquita Lyons** <mlyons@bishop.edu>                               Mon, Jun 4, 2018 at 4:45 PM
To: Reve' Batley <rbatley@bishop.edu>

Hi Reve',

Thank you and yes I am feeling better. I can see you tomorrow, anytime after lunch. What time works good for you?
[Quoted text hidden]

---

**Reve' Batley** <rbatley@bishop.edu>                                Sun, Jun 10, 2018 at 9:30 PM
To: Marquita Lyons <mlyons@bishop.edu>

Good evening Ms. Lyons,
I am beginning to think my luck can't get much worse, so you may want to rethink even being in the same room with me! I apologize for just now getting back with you, but my mom was involved in an automobile accident last week and had to be hospitalized a couple of days. I went to be with her in MS and stayed with her afterward when she went back home. Now I feel like I am the one who has been in a flaming five car pile up!

All that aside, I am back home from my tenure in MS with my mom and am available to come see you most any time this week if you have 10 minutes you can spare somewhere. Please let me know your availability or a time that is good for you, and I will make it happen. I need to get this off my plate, and I am sure you have better thing so to do as well!

Again, I do apologize for the delay in getting back with you, but my world stops turning for my mom!
Thank you for your prompt and courteous attention to my request. I sincerely appreciate it!
[Quoted text hidden]

# EXHIBIT 18

| POLICY NAME: | 603.02:  Contracts: Summer Employment of Salary Schedule D Employees |
|---|---|
| EFFECTIVE: | August 9, 2017 |
| SUPERSEDES: | |
| SOURCE: | *ACT #2015-125* |
| CROSS REFERENCE: | |

1. A full-time Schedule D employee who is employed by virtue of an academic year letter-of-appointment (fall and spring semesters) shall have first option (over part-time or temporary employees) for employment in the summer term provided that: (1) there is sufficient student enrollment: (2) there is sufficient funding available; (3) the employee is qualified to provide the service scheduled; (4) the employee meets the criteria of the institution's local summer employment policy; and (5) instructors may be given priority for summer teaching only in courses taught by the employee in the most recent fall and/or spring semesters.

2. Each institution must develop a local summer employment policy.

SECTION  PERSONNEL POLICIES AND PROCDURES/                          NUMBER: F/6.2
EMPLOYMENT WORK SCHEDULE
SUBJECT: Summer Term Employment Policy/Flexible Work Schedule

---

# SUMMER TERM POLICY FOR EMPLOYMENT OF INSTRUCTORS

The summer term is a separate entity, distinct from the fall and spring semesters; therefore, certain guidelines are set up to insure an equitable procedure for selecting personnel for summer term employment.

## Need/Priority for Teaching Full Time

The Academic and/or Technical Dean, Directors and Division Chairpersons will establish, based on student needs, the number of classes by division and/or program to be offered during the summer session.

1. First priority for teaching will go to the Divisional Chairpersons because of the administrative duties expected of them in addition to their teaching.

2. A full-time instructor, counselor, or librarian on Salary Schedule D who is employed by virtue of a nine month contract (fall and spring semesters) with a state community, junior, or technical college, shall have first option (over part time or temporary employees) for employment at that college in the summer term, provided that: (1) there is sufficient student enrollment; (2) there is sufficient funding available, (3) the employee is qualified to provide the service scheduled; (4) the employee is in line to be hired by the college's summer employment policy; (5) an instructor, counselor, or librarian who attained tenure prior to September 1, 1979, and who is employed by virtue of a nine-month contract with a technical college or technical division of a community college, and who desires to be employed during the summer term, shall have the first option for employment over all other full-time technical college/division employees covered by this policy at the institution; and (6) instructors may be given priority for summer teaching only in those areas in which they taught on a regular basis during the preceding academic year. The summer employment policy for the college must be based upon a seniority principle, a rotation principle, or a combination thereof.

## Flexible Work Schedule

All Alabama Community College System employees engaged in outside employment or activities during their normal work hours must request personal, annual or unpaid leave in accordance with State Board Policy. Unpaid leave may be granted only in accordance with and for the reason outline in Policy G/2.3 in this Handbook.

In circumstances other than those specified in paragraph one, a flexible work schedule may be granted upon approval of the Chancellor. A flexible work schedule may be granted to employees in compliance with the Americans with Disabilities Act as a reasonable accommodation when appropriate.

This policy shall supersede all other policies with respect to employee work schedules and assignments.

# EXHIBIT 19

View Term Calendar for Term: **FA2005**          8/23/19

Term Begins:              Term Ends:              Number of Class Days:
**8/17/2005**             **12/15/2005**          **80**

Registration Dates

Day Division: **8/16/2005** Evening Division: **8/16/2005** Not Scheduled: **8/16/2005**

Refund Periods:    **100** Percent Through **8/16/2005**      End of Drop/Add:
                    **75** Percent Through **8/23/2005**        **8/19/2005**
                    **50** Percent Through **8/30/2005**
                    **25** Percent Through **9/07/2005**   Post W/D During Drop/Add
                                                             to History (Y/N)?  **Y**

        Title IV 60% Period ends: **10/24/2005**
        Administration Fee Percent: **5**          Allow Charge to Financial
                                                   Aid Starting on: **7/13/2005**

            End Date for Posting
          Non-Punitive Grade: **12/15/2005**
                 Grade Posted: **W**


                    Press **ENTER** to exit

Payroll Contracts: Payroll Contracts Maintenance for Year  2005
[Employee] 2304      TOMMI R BATLEY
   Campus............. 0                Date Cont Empl. 08/17/2005
   Status (F/P/R/T). F                  Years Service.. 13 Mo. 9   Non-Prob. Y
   Primary Position. FACU INSTRU        Highest Deg/Awd PHD   Occup Activity F
                                                              Census 1
   Sch.. D1  Rank. 1A Step. 11                                Disability N
                                                              Retire# Y
                                                              Teach Stat F
   Race. W Sex F DOB 10/09/1972      YTD-PT/OL/OT...     0.00
    Current Contracts               YTD-Tot Salary.     0.00     DIV A
     Code Term      Seq Begin Date   End Date   Pay Amount   Last Pay  For Total
 01 R9CR*             08/17/2005 05/10/2006   3512.33 12    3512.37   42148.00
 02
 03
 04
 05
 06
 07
 08

     SELECT: 00 (F1=PgUp  F2=PgDn  F12=Exit)      Total All Contracts   42148.00
              (F3=PREPD F5=PRPFD F6=Course Summary F7=Personnel Notes)

```
   [Emp #]  2304        Instr    2304         [Position] F  J INSTRU Dte: 08/17/2005
01 TIN Type: S (S/I) Tin: ***** 2426          Title: INSTRUCTOR
Fi  TOMMI
Mid R                                         Sal Schd: D1            Dte: 08/17/2005
Lst BATLEY                       Suf             Status: F (F/P/O/T) Trm:
Bi                        DOB      /1972       Yrs Serv: 13  Mo: 4  Hired 08/17/2005
   Pref: TOMMI                              10 Miscellaneous data:
SS Name: TOMMI R BATLEY                        Retirement #.........
Rev Name: BATLEY TOMMI R                       Teaching Status: F  Pgm Division: A
02 Addr   1119 SELMA STREET                    Last Term Teaching... SP2019
   Addr                                        [Occ Act] F  [SOC] 251000 SubSOC IC
   City    MOBILE           [St] AL
   Zip     36604                               Full Time Date.......
03 Phone 251-694-1796  Unlisted N (Y/N)        Non-Probationary Sts. Y (Y/N/T)
[Cell]                   Tel:                    Review Status Dte.
04 [Chk Loc] BI02  [CC] 0  Pay Per: MO        Date Continuous Empl. 08/17/2005
05 [Race] W Sex. F                            [Highest Degree Held] PHD [Rnk] NR
06 Disability: N    Census Act(1-5) 1         Rpt PS Y  2007 084 IPEDS: Y SEC:
07 Notify MARY BATLEY                          Exempt................    (Y/N/Space)
Tel. 601-394-2385 Rel MOTHER               11 [Stu#]
08 Mailto: rbatley@bishop.edu
   Mailto: rbatley@bishop.edu
Sel: 00 F2=PRCPR F3=REC F4=DEL F5=Chg Emp# F6=PRDDA F7=PRPFD F8=PRES F10=Aprvl
```

Payroll Contracts: Payroll Contracts Maintenance for Year 2005
[Employee] ███████ ███████
Campus........... 0                       Date Cont Empl. 01/10/2002
Status (F/P/R/T). F                       Years Service.. 16 Mo. 9   Non-Prob. Y
Primary Position. FACU INSTRU             Highest Deg/Awd OD    Occup Activity F
                                                                     Census 1
Sch.. D1  Rank. 1A Step. 05                                      Disability N
                                                                    Retire# Y
                                                                Teach Stat F
  Race. W Sex F DOB ███████        YTD-PT/OL/OT...     0.00
   Current Contracts               YTD-Tot Salary.     0.00       DIV A
    Code Term     Seq Begin Date    End Date    Pay Amount   Last Pay  For Total
01 C1CR FA2005      08/17/2005 12/19/2005     375.00 04    375.00    1500.00
02 C3CR SP2006      01/06/2006 05/10/2006     375.00 04    375.00    1500.00
03 R9CR*            08/10/2005 05/10/2006    3318.83 12   3318.87   39826.00
04
05
06
07
08

   SELECT: 00 (F1=PgUp  F2=PgDn  F12=Exit)     Total All Contracts   42826.00
          (F3=PREPD F5=PRPFD F6=Course Summary F7=Personnel Notes)

# EXHIBIT 20

**Bishop State**                                                    Reve' Batley <rbatley@bishop.edu>

## Appointment request
4 messages

**Reve' Batley** <rbatley@bishop.edu>                              Thu, Feb 7, 2019 at 4:03 PM
To: Ann Clanton <aclanton@bishop.edu>
Cc: Lillie Wright <lwright@bishop.edu>

Good afternoon ladies,

Since I didn't know if I should contact Ms. Clanton directly or make my request through Ms. Lillie, I just decided to cover all of my bases and send this to both of you!

I am contacting you to request a date and time when Ms. Clanton may be available to meet with me briefly to answer some questions and/or hopefully clarify some things about how seniority is determined for academic faculty at the college.

I have not been able to get any clear answers or information from Human Resources regarding this matter specifically as it pertains to academic instructors who are assigned and/or are required to fulfill a specified contract period such as those of us who have the standard 9 month contract. If either of you can direct me to where I might be able to find a copy of this policy as it pertains to academic faculty, I would appreciate it.

I would also appreciate you letting me know Ms. Clanton's earliest availability to meet with me regarding this matter. You may reach me on my cell phone at any time 251-366-2358, by email, or at my office extension 7091.

Thank you very much and have a nice weekend,

Reve Batley

---

**Lillie Wright** <lwright@bishop.edu>                            Tue, Feb 12, 2019 at 8:18 AM
To: Reve' Batley <rbatley@bishop.edu>

Good morning Ms Batley, can you meet with Ms Clanton on Thursday February 14th between 8:00 and 8:30 am.


Lillie
[Quoted text hidden]

---

**Reve' Batley** <rbatley@bishop.edu>                             Tue, Feb 12, 2019 at 9:25 AM
To: Lillie Wright <lwright@bishop.edu>

Yes ma'am, I can. Let me know if anything changes on her end. Thank you for getting back with me. I'll see you then.
[Quoted text hidden]

---

**Lillie Wright** <lwright@bishop.edu>                            Tue, Feb 12, 2019 at 9:31 AM
To: Reve' Batley <rbatley@bishop.edu>

Thank you so much!
[Quoted text hidden]